The Honorable Stanley A. Bastian

Matthew T. Macklin, WSBA 57867
Stratagem Law Group, PLLC
720 Seneca Street, Suite 107 PMB 7
Seattle, WA 98101
253.313.2284– Voice
mtm@stratagemlawgroup.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **STEPHANIE R. RASKIN**, an unmarried individual, | NO. 2:22-CV-232-SAB |
| Plaintiff, | **AMENDED COMPLAINT** |
| vs. | *JURY DEMNAD* |
| **NORTHEAST WASHINGTON ALLIANCE COUNSELING SERVICES**, a Steven's County, Washington agency; **STEVENS COUNTY**, a Washington state county; **MARTHA FAIRLEY,** Supervisor, Northeast Washington Alliance Counseling Services; **DAVID NIELSEN,** Executive Director, Northeast Washington Alliance Counseling Services, | |
| Defendants. | |

Plaintiff, STEPHANIE R. RASKIN, an unmarried individual, ("Plaintiff"), by and through her attorney, Matthew T. Macklin, Stratagem Law Group, hereby alleges as follows:

### PRELIMINARY STATEMENT

1.  This action seeks declaratory, injunctive, and equitable relief, as well as monetary

COMPLAINT - 1

Matthew T  Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com



damages, to redress Defendant's violations of the Americans with Disability Act (ADA) 42 USC § 12132 et seq., as well as the Washington Law Against Discrimination (WLAD) RCW 49.60.210, violation of the Family Medical Leave Act 29 CFR § 825.220, failure to investigate Plaintiff's complaint of sexual harassment, and violation of Plaintiffs Washington Constitutional rights.

2. Specifically, Defendant violated these various statutes through a series of distinct and ongoing violations based upon Plaintiff's disability, further described below.

3. Defendant's unlawful conduct was knowing, malicious, willful, wanton, or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages.

4. Plaintiff timely filed a complaint with the EEOC and Washington Commission Against Discrimination before the expiration of time limits but did not receive a response.

## I.    PARTIES

1. Plaintiff STEPHANIE R. RASKIN is an unmarried individual residing at 4710 40th Avenue SW, Apartment N-442, Seattle, Washington 98116.

2. Defendants include NORTHEAST WASHINGTON ALLIANCE COUNSELING SERVICES, a Steven's County, Washington agency located at 165 East Hawthorne Avenue, Colville, Washington 99114. This agency is a federal contractor contracted with the Centers for Medicare and Medicaid Services.

3. Defendant, STEVENS COUNTY, is a Washington state county with its County Auditor's office and its registered agent at 215 South Oak Street, Room 106, Colville, Washington 99114.

4. Defendant MARTHA FAIRLEY is an individual who serves as a supervisor for

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 2



1    Defendant Northeast Washington Alliance Counseling Services at 165 East
2    Hawthorne Avenue, Colville, Washington 99114.

3    5.    Defendant, DAVID NIELSEN, is an individual whose marital status is unknown and
4    who also serves as a supervisor and Executive Director for Defendant Northeast
5    Washington Alliance Counseling Services at t165 East Hawthorne Avenue, Colville,
6    Washington 99114.

## II.   JURISDICTION AND VENUE

6.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

7.    Plaintiff STEPHANIE R. RASKIN and Defendant NORTHEAST WASHINGTON
ALLIANCE COUNSELING SERVICES entered into an employment arrangement
on or about July 11, 2017, in Stevens County as an hourly non-exempt employee of
Defendants Stephens County through Northeast Washington Alliance Counseling
Services.

8.    Plaintiff was a resident of Stevens County, Washington, at the time of her
employment.

9.    Defendant, NEWASS, is a Stevens County agency.

10.   Defendant, STEVENS COUNTY, is a Washington state county.

11.   Defendant MARTHA FAIRLEY is a Supervisor for Defendant Northeast
Washington Alliance Counseling Services and Plaintiff's former supervisor.

12.   Defendant DAVID NIELSEN is the Executive Director for Defendant Northeast
Washington Alliance Counseling Services and Plaintiff's former supervisor.

13.   The jurisdiction of this Court is proper under 28 USC 1331. Defendants' acts violate
federal laws, including the Americans with Disabilities Act, Rehabilitation Act, and
other federal statutes.

Matthew T  Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 3



14. This venue is proper in the Eastern District of Washington because Defendants' acts occurred in Stephens County, Washington, and also include violations of the Washington Law Against Discrimination.

### III. FACTS

15. Plaintiff realleges and incorporates by reference all preceding paragraphs.

16. On or about July 11, 2017, Plaintiff and Defendant Northeast Washington Alliance Counseling Services (hereinafter "NEWACS") entered into an employment contract wherein Plaintiff was hired as a Certified Peer Counselor, paid hourly as a non-exempt employee. (Exhibit 1).

17. As a condition for employment, NEWACS "Certified Peer Counselors" are required, among other things, to be a current or previous consumers of mental health services.

18. Defendants were aware of Plaintiff's mental health consumption at the time of hire, knowing of her actual disability, and or was regarded as a person with a disability.

19. Before Plaintiff's employment with NWACS, she had been diagnosed with bipolar disorder, PTSD, anxiety, and later ADHD. (Exhibit 2).

20. Plaintiff has never displayed symptoms of her diagnosis while on duty or in a way that has substantially affected her work.

21. Plaintiff has always performed her work as required.

22. Plaintiff's job duties were to "provide inpatient evaluation and treatment services 24 hours per day, 7 days per week for people with acute symptoms of a mental disorder. 'Services will include evaluation, stabilization, and integrated treatment provided by or under the direction of licensed psychiatrists, nurses, and other behavioral health professionals, and/or Certified Nursing Assistants (CNA)." (Exhibit 3).

23. Plaintiff's Agency Employee Number was 739 while employed with Defendant

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 4



NEWACS. *Id.*

24. During Plaintiff's employment, her most recent supervisor was Defendant Martha Fairley.

25. During Plaintiff's tenure of employment with Defendant NEWACS, she had approximately eight (8) different supervisors due to employee turnover.

26. Plaintiff received above-average performance reviews from 3 different supervisors over 3-year periods, including one conducted in the fall of 2019. (Exhibit 4).

27. Plaintiff's performance reviews noted one consistent concern: the overuse or exhaustion of paid time off (PTO). *Id.*

28. Plaintiff's reviews cited frequent "sudden use of PTO" as a concern. *Id.*

29. Throughout her employment, including during performance reviews and during instances or times where time off was needed to manage her mental health, Plaintiff overtly indicated her need for accommodation to her supervisors. *Id.*

30. Defendants did not respond with any accommodations for her disability other than "encouraging" Plaintiff to "plan ahead." *Id.* at 18.

31. NEWACS was aware of potential Family Medical Leave Act eligibility, at least from performance reviews and supervisor observations, but did not inquire, offer, or provide information to Plaintiff.

32. In December 2018, Plaintiff sought help from medical providers for her worsening PTSD and depression but could not secure the care needed.

33. On February 12, 2019, Plaintiff was hospitalized for worsened PTSD and depression.

34. On Plaintiff's return to her employment with Defendant Northeast Washington Alliance Counseling Services, Plaintiff was required to submit to a conditional

COMPLAINT - 5

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup com



1     agreement. (Exhibit 2).

2   35. NEWACS has no policy to issue such an agreement for any reason.

3   36. NEWACS consulted an outside agency for drafting the "Return to Work

4      Agreement."

5   37.  NEWACS had never issued such a return-to-work requirement since at least the

6      current executive director has been in his position since the mid-00s.

7   38. NEWACS has not issued such an agreement as the return-to-work agreement since

8      February 26, 2019.

9   39. NEWACS has no current policy for "Return to Work Agreements."

10   40. Plaintiff had no documented disciplinary action, adverse employment events, or

11      specific education until NEWACS official Nielson required Plaintiff to consent to

12      unlawful demands in a mandatory "Return to Work Agreement." *Id.*

13   41. The "Return to Work" agreement issued February 26, 2019, required Plaintiff to

14      agree as "a condition of resuming and continuing [] employment at NEWACS as a

15      certified peer counselor" the following: "[Plaintiff] must…" *Id.*

16      *a.*   "[E]nroll in, attend mental health treatment appointments, follow the

17          treatment recommendations, and cooperate with mental health treatment

18          from a licensed, behavioral health treatment agency, or an approved,

19          behavioral health clinician for no less than six months," *Id.*

20      *b.*   "[E]nroll in, attend psychiatric medication, management, treatment

21          appointments, follow the treatment recommendations, and cooperate with

22          psychiatric medication management treatment from a licensed, behavioral

23          health prescriber for no less than six months." *Id.*

24      c.   "[A]llow the *free release* of information between your mental health

25

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 6



clinician, your psychiatric medication, management, prescriber, and the NEWACS Personnel Specialist [Roberta Brozik, non-clinician] and Executive Director [David Neilson] to monitor your treatment progression and ensure your ongoing ability to perform your assigned job duties without restrictions. NEWACS will consult with your mental health treatment provider and psychiatric medication prescriber no less than once per month from March through August 2019 to monitor your treatment participation and ongoing ability to engage in your assigned duties at NEWACS without *further* restrictions." *Id.* [emphasis added].

42. The "Return to Work Agreement" stipulated that "At the conclusion of the six-month monitoring. (On or around August 31, 2019), NEWACS will conduct an evaluation to determine whether this quote return to work agreement "requires renewal, modification, or conclusion. *Id.*

43. No evaluation, as stipulated in paragraph 22, occurred at any time. Plaintiff was told she had not been on probation. (Exhibit 5).

44. Plaintiff's continued employment was dependent on signing the return-to-work agreement.

45. Had Plaintiff "elect[ed] NOT to enter into this agreement or should [Plaintiff] withdraw [Plaintiff's] agreement before the end of the six-month monitoring period described above, NEWACS *will* initiate procedures to determine whether a 'Fitness for Duty, Separation of Employment' shall occur." Exhibit 2, at 2 [*emphasis added*].

46. Plaintiff indicated that she would be managing care herself and would need time to coordinate, given the limited access to qualified mental health providers in the immediate community. Plaintiff's finding appropriate providers was compounded by

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 7



Plaintiff's unwillingness to establish mental health care with colleagues or associates of NEWACS.

47. NEWACS did not provide information for, discuss, or offer FMLA information to Plaintiff at any time before the February 26, 2019, unlawful conditional employment agreement meeting.

48. NEWACS finally notified Plaintiff of FMLA eligibility on August 20, 2020. (Exhibit 6).

49. The discriminatory agreement began a series of discriminatory practices by NEWACS fueled by Plaintiff's disability and were retaliatory for Plaintiff's reporting other misconduct within NEWACS.

50. On November 30, 2019, Plaintiff reported sexual harassment by a case manager directly to NEWACS Executive Director David Neilson via email, without response from him.

51. On December 9, 2019, Plaintiff sent a second email reporting sexual harassment to both the NEWACS Executive Director David Neilson and her direct supervisor Analise Pond via email with screenshots of text messages that included the inappropriate behavior.

52. NEWACS Management failed to conduct or make plaintiff aware of any investigation or ensure employee, patient, and client safety surrounding the substantiated allegations of sexual harassment.

53. NEWACS supervisor Analise Pond's follow-up to Plaintiff's sexual harassment complaint on or around the next day, December 10, 2019, stating she told Plaintiff "to let [Pond] know if [sexual harassment] happens again." In an email to NEWACS Executive Director and HR Specialists. Exhibit 2, Email thread RE: Sexual

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup com

COMPLAINT - 8



Harassment 11.30.19. (Exhibit 7).

54. No follow-up to the allegation was made to Plaintiff regarding her reports of sexual harassment by a male case manager employed by NEWACS.

55. Immediately following Plaintiff's complaint of sexual harassment, Defendants subjected Plaintiff to disciplinary action for alleged violations of agency policy. However, the policies cited in the corrective actions were neither appropriate nor identified the alleged violations. Exhibit 8

56. NEWACS has no history of educating Plaintiff or other staff on the violations Plaintiff alleged to have breached.

57. NEWACS management has no knowledge of the alleged policy violations being identified by any NEWACS policy, being taught through any agency in-service, or being enforced against other staff before, contemporaneously, or after Plaintiff's disciplinary action.

## IV. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION – AMERICANS WITH DISABILITIES ACT (ADA) VIOLATION

58. Plaintiff realleges and incorporates by reference all preceding paragraphs.

59. Defendants, in their capacities as employers and supervisors, have discriminated against Plaintiff based on her known mental health condition.

60. Defendants were aware of Plaintiff's mental health disability at the time of employment, as evidenced by the requirement for "Certified Peer Counselors" to be a current or previous consumer of mental health services.

61. Despite this awareness, Defendants subjected Plaintiff to discriminatory employment conditions, such as imposing an unlawful conditional employment

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 9



agreement requiring her to participate in involuntary counseling services.

62. These actions constituted disparate treatment of Plaintiff due to her disability, violating the ADA.

63. Furthermore, Defendants failed to provide reasonable accommodation for Plaintiff's disability, an essential requirement under the ADA.

64. Despite Plaintiff's apparent need for accommodation, as evidenced by their requirement for counseling services, Defendants did not engage in any interactive process to determine suitable accommodations for Plaintiff.

65. As a result of Defendants' discriminatory practices and failure to provide reasonable accommodations, Plaintiff has suffered and continues to suffer substantial harm, including emotional distress, loss of dignity, and economic damages.

66. These actions by Defendants constitute violations of the Americans with Disabilities Act (ADA) 42 USC § 12132 et seq, which prohibits discrimination on the basis of disability and requires employers to provide reasonable accommodations for employees with disabilities.

**B. SECOND CAUSE OF ACTION – REHABILITATION ACT VIOLATION**

67. Plaintiff realleges and incorporates by reference all preceding paragraphs.

68. Defendants, acting in their capacity as employers, have knowingly and systematically discriminated against Plaintiff. Defendants' discrimination is based on Plaintiff's known mental health condition, a disability recognized under the Rehabilitation Act.

69. Defendants have failed to fulfill their obligations under the Rehabilitation Act by failing to engage in a required process to identify and provide reasonable accommodation for Plaintiff's disability.

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 10



70. Despite being fully aware of Plaintiff's mental health disability and the resulting need for accommodation, Defendants did not initiate or engage in any interactive process to identify or provide appropriate accommodations for Plaintiff.

71. As a result, Defendants subjected Plaintiff. to discriminatory and unequal terms of employment.

72. This failure to provide reasonable accommodation and the resulting discrimination has caused and continues to cause substantial harm to Plaintiff, including emotional distress, loss of dignity, and economic damages.

73. These actions and failures by Defendants constitute violations of the Rehabilitation Act, which mandates non-discrimination on the basis of disability in programs that receive federal financial assistance and imposes obligations on employers to provide reasonable accommodations for employees with disabilities.

## C.  THIRD CAUSE OF ACTION – HOSTILE WORK ENVIRONMENT

74. Plaintiff realleges and incorporates by reference all preceding paragraphs.

75. Defendants, in their capacities as employers and supervisors, have created and maintained a work environment that was permeated with discriminatory intimidation, ridicule, and insult.

76. This environment was severe and pervasive enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

77. Defendants continuously subjected Plaintiff to disparate and unfair treatment, including but not limited to violating Plaintiff's privacy and constitutional rights and imposing unwarranted and unequal disciplinary actions.

78. These actions were directly linked to Plaintiff's known mental health condition, further contributing to a hostile work environment.

Matthew T  Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup com

COMPLAINT - 11



79. Such conduct by Defendants constitutes a violation of both federal and state laws that protect employees from hostile work environments, including but not limited to the Americans with Disabilities Act (ADA) and the Washington Law Against Discrimination (WLAD).

80. Due to Defendants' actions, Plaintiff has suffered and continues to suffer significant harm, including emotional distress, loss of dignity, and economic damages.

## D. FOURTH CAUSE OF ACTION – VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION (WLAD)

81. Plaintiff realleges and incorporates by reference all preceding paragraphs.

82. Defendants have retaliated against Plaintiff under RCW 49.60.210 for making a sexual harassment complaint against a male case manager at NEWACS, which they did not investigate.

83. Defendants have discriminated against Plaintiff based on Plaintiff's mental health disability, which has caused damage to Plaintiff as a result.

84. **FIFTH CAUSE OF ACTION—RETALIATION AGAINST WHISTLEBLOWER**

85. Plaintiff incorporates by reference all preceding paragraphs.

86. Defendants have violated the Washington Law Against Discrimination (WLAD) under RCW 49.60.210 by engaging in retaliatory actions against the Plaintiff.

87. Specifically, Plaintiff engaged in protected activity by reporting a sexual harassment incident involving a male case manager at Northeast Washington Alliance Counseling Services (NEWACS) to her superiors on November 30, 2019, and December 9, 2019.

88. Plaintiff also opposed the imposition of an unlawful "return to work agreement" in

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 12



1     or around March 2020 when brought to her attention by colleagues.

2 89. Defendants, fully aware of Plaintiff's report and opposition, subsequently engaged

3     in adverse employment actions against Plaintiff.

4 90. These actions included unfair treatment, including but not limited to violating

5     Plaintiff's privacy and constitutional rights, imposing unwarranted and unequal

6     disciplinary actions, hostility and retaliation when requesting FMLA leave, and

7     disclosing her personal health information and "return to work agreement" contents

8     to unauthorized persons, etc.

9 91. These adverse actions were directly linked to Plaintiff's report and opposition,

10     demonstrating a causal connection between the protected activity and the adverse

11     employment actions.

12 92. As a direct result of Defendants' retaliatory actions, Plaintiff has suffered and

13     continues to suffer substantial harm, including emotional distress, loss of dignity,

14     and economic damages. Such actions by the Defendants constitute violations of the

15     WLAD's provisions against retaliation.

16 93. **SIXTH CAUSE OF ACTION – FAILURE TO INVESTIGATE SEXUAL**

17     **HARASSMENT**

18 94. Plaintiff incorporates by reference all preceding paragraphs.

19 95. Defendants failed in their duty to investigate Plaintiff's report of sexual harassment

20     involving a male case manager at Northeast Washington Alliance Counseling

21     Services (NEWACS).

22 96. Despite Plaintiff's clear communication of the incident to Defendants, they did not

23     initiate an adequate investigation or take appropriate action to address the complaint.

24 97. Such failure to investigate is contrary to both federal and state laws that obligate

25

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup com

COMPLAINT - 13



employers to take immediate and appropriate action when they become aware of potential sexual harassment in the workplace.

98. Defendants' negligence further constitutes a breach of the reasonable care employers are required to exercise in order to maintain a safe, respectful, and non-hostile work environment.

99. Due to Defendants' failure to investigate sexual harassment, Plaintiff has suffered and continues to suffer harm, including emotional distress, loss of dignity, and economic damages, as well as continued exposure to a hostile work environment.

## E. EIGHTH CAUSE OF ACTION – VIOLATION OF WASHINGTON CONSTITUTION ARTICLE I, SECTION 7

100. Plaintiff incorporates by reference all preceding paragraphs.

101. Defendants, in their capacity as the Plaintiff's employers and supervisors, have unreasonably intruded into the Plaintiff's private affairs without the authority of law.

102. Defendants, while aware of Plaintiff's mental health condition, a private and sensitive matter, unreasonably leveraged this information to impose discriminatory employment conditions.

103. Specifically, Defendants imposed an unlawful conditional employment agreement on Plaintiff, requiring her to participate in involuntary counseling services as a condition of her continued employment.

104. This action by Defendants represents an unwarranted invasion of Plaintiff's private affairs.

105. Defendants failed to adequately respond to or investigate Plaintiff's report of sexual harassment, thereby allowing an intrusion into her personal dignity and causing emotional distress.

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 14



106. This neglect by Defendants further intrudes into Plaintiff's private affairs, violating her right to privacy and dignity at her workplace.

107. By these actions, Defendants have violated Article I, Section 7 of the Washington Constitution, which provides that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." As a result of these violations, Plaintiff has suffered and continues to suffer damages.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, STEPHANIE R. RASKIN, prays for judgment against Defendants, NORTHEAST WASHINGTON ALLIANCE COUNSELING SERVICES, STEVENS COUNTY, MARTHA FAIRLEY, and DAVID NIELSEN, and requests the following relief:

1. A declaration that the actions and conduct of Defendants violated the Americans with Disability Act (ADA), the Rehabilitation Act, and the Washington Law Against Discrimination (WLAD).

2. An injunction permanently restraining Defendants from continuing the unlawful practices complained of herein and requiring Defendants to take affirmative actions to correct for the effects of their unlawful practices.

3. 3. Back pay, front pay, and lost benefits, including but not limited to lost wages and future earnings, with interest, for Defendants' unlawful conduct.

4. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for her physical, mental, and emotional injuries, including pain and suffering, caused by Defendants' unlawful conduct.

5. Punitive damages in an amount sufficient to punish Defendants for their willful, wanton, and reckless conduct and to deter Defendants from engaging in similar

Matthew T Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup.com

COMPLAINT - 15



conduct in the future insomuch as they are available by law.

6.  Reasonable attorney's fees, expert witness fees, and costs incurred in bringing this action pursuant to the ADA, the Rehabilitation Act, and the WLAD.

7.  Pre-judgment and post-judgment interest as permitted by law.

8.  For leave to amend this Complaint to add additional claims, if necessary, as discovery progresses or to conform to the proof at trial.

9.  Such other and further relief as this Court deems just, equitable, and appropriate under the circumstances.

DATED this 13 day of October 2023

_____

Matthew T. Macklin, WSBA 57867
Stratagem Law Group, PLLC
720 Seneca Street, Suite 107 PMB 7
Seattle, WA 98101
253.313.2284– Voice
mtm@stratagemlawgroup.com

Attorney for Plaintiff

Matthew T  Macklin
Stratagem Law Group, PLLC
720 Seneca Street
Suite 107 PMB 7
Seattle, WA 98101
253 313 2284
mtm@stratagemlawgroup com

COMPLAINT - 16



# Exhibit 1



**NorthEast Washington**

**ALLIANCE**
Counseling Services

**Stevens County Offices**

**Colville Office:**
165 E. Hawthorne Ave.
Colville, WA 99114
(509)684-4597
(509)684-5286 Fax
1-866-708-4597
(toll-free in WA)
(509)684-7565 TCC/TTY
(for hearing impaired)

**Chewelah Office:**
301 E. Clay, #201
P.O. Box 905
Chewelah, WA 99109
(509)935-4808
(509)935-4897 Fax

July 11, 2017

Stephanie Raskin
10926 Tower Park Drive
Rancho Cordova, CA 95670

Dear Stephanie,

I am pleased you have accepted the position of "E&T Certified Peer Counselor" at Northeast Washington Alliance Counseling Services (NEWACS). Patricia Howard, E & T Nurse Manager will be your supervisor. As discussed, your hire date will be October 2, 2017 and your primary work station will be out of the Alliance Evaluation & Treatment Facility located within Mount Carmel Hospital in Colville.

As you know, this is a full time (1.0 FTE), benefitted position. Your salary for this position will be $43,222.00 per year (which is "Step 4" on our salary matrix for the position of "E&T Certified Peer Counselor"). On October 2, 2019, you will be eligible for an increase to Step – 5 on our salary matrix, with a current salary of $45,240.00. Thereafter, "step-increases" typically occur every 24-months. There is a 6-month probation period during which time we will be evaluating your performance, and you will be assessing how we as an agency meet your expectations.

Please complete the necessary application for "Agency Affiliated Counselor" license with the Washington State Department of Health. You are required to possess this certifications prior to beginning any direct "client care." NEWACS will reimburse you for the cost of the license fee upon the issuance of those license by the Washington State Department of Health, provided that you are still employed at NEWACS. If you have not obtained an Agency Affiliated Counselor license through the Department of Health by the time you complete your initial orientation at NEWACS (approximately December 2, 2017), you may be placed on "leave without pay" status until such time as you obtain at least one of the required licenses. Our Human Resource Specialist, John Moser, can assist you with the application process. You can reach John during regular office hours at: (509) 685-0629. You can obtain current licensure application online from the Washington State Department of Health at the following website:

Agency Affiliated Counselor:
http://www.doh.wa.gov/LicensesPermitsandCertificates/ProfessionsNewRenewor Update/AgencyAffiliatedCounselor/ApplicationsandForms

*You should report to our main, outpatient office in Colville at 8:00 am on your first day of employment and ask for John Moser.*

In order to complete the hiring process, please bring your Social Security Card, driver's license, proof of vehicle insurance, and a driver's license abstract (can be obtained from local Department of Licensing) to work on your first day of employment.  If you have documentation on completion of CPR/First Aid Training and TB Test results, please bring these also.

Finally, NEWACS must require a fingerprint-based background check through either the Washington State Patrol or the Federal Bureau of Investigation whenever applicants have resided in Washington State less than three consecutive years before starting work.  A condition of (1) passing the Probationary Period of employment at NEWACS and (2) being able to provide services to our youth and vulnerable adult clients will be that you successfully pass the criminal background check.  Again, please work with John Moser to coordinate getting the results of your fingerprints sent to NEWACS.

Once again, I am very pleased that you have accepted this job offer, and I look forward to working with you! If you have any questions before you start working with us, please don't hesitate to contact me at either (509) 685-0627 or dmnielsen@stevenscountywa.gov or John Moser at (509) 685-0629 or jmoser@stevenscountywa.gov.

Sincerely yours,

David Nielsen, Ph.D.
Executive Director


cc:     Personnel File
        Payroll
        Patty Howard

# Exhibit 2

NorthEast Washington

**ALLIANCE**
Counseling Services

COLVILLE  99114
165 E Hawthorne Ave
(509) 684-4597
1-866-708-4597
(509) 684-5286  Fax

CHEWELAH  99109
301 E Clay, #201
PO Box 905
Chewelah, WA  99109
(509) 935-4808
(509) 935-4897  Fax

DAVENPORT  99122
1211 Merriam St
(509) 725-3001
1-888-725-3001
(509) 725-1606 Fax

REPUBLIC  99166
PO Box 1120
(509) 775-3341
(509) 775-8906 Fax

To:         Raskin, E&T Peer Counselor

From: David Nielsen, Ph.D.

CC:  Personnel File; Pam Hofer

Date: February 26, 2019

Re:  Return to Work Agreement

Earlier this month, I was notified of your serious health condition and suicide attempt that culminated in your admission to Frontier Behavioral Health – Calispel Evaluation & Treatment Facility from February 14, 2019 – February 20, 2019. Yesterday, I received written notice from                      of your release to return to work without any restrictions.

As a Peer Counselor with Northeast Washington Alliance Counselor Services, one of your duties is to share your own life experiences related to mental illness to build alliances that enhance the ability of others with mental illness to function. Implicit in this job duty is the responsibility to ensure your emotional health/stability. Therefore, in light of the nature of your recent health condition and the requirement to ensure you own emotional health/stability in order to perform your assigned job duties, you are being required to enter into the following "Return to Work Agreement" as a condition of resuming and continuing your employment at NEWACS as a Certified Peer Counselor:

1.  You must enroll in, attend mental health treatment appointments, follow the treatment recommendations, and cooperate with mental health treatment from a licensed behavioral health treatment agency or an approved behavioral health clinician for no less than six (6) months.

2.  You must enroll in, attend psychiatric medication management treatment appointments, follow the treatment recommendations, and cooperate with psychiatric medication management treatment from a licensed behavioral health prescriber for no less than six (6) months.

3.  You must allow the free release of information between your mental health clinician, your psychiatric medication management prescriber, and the NEWACS Personnel Specialist and Executive Director to monitor your treatment progression and ensure your ongoing ability to perform your assigned job duties without restrictions. NEWACS will consult with your mental health treatment provider and psychiatric medication prescriber no less than once per month from March – August, 2019 to monitor your treatment participation and ongoing ability to engage in your assigned duties at NEWACS without further restrictions.

At the conclusion of the 6-month monitoring period (on our around August 31, 2019), NEWACS will conduct an evaluation to determine whether this "Return to Work Agreement" requires renewal, modification, or conclusion.

By signing this agreement, you agree to the conditions contained in this "Return to Work" Agreement. Should you elect NOT to enter into this Agreement or should you withdraw your agreement before the end of the 6-month monitoring period described above, NEWACS will initiate procedures to determine whether a "Fitness for Duty Separation of Employment" shall occur.

I have read the above "Return to Work Agreement" and agree to the conditions contained herein.

Workforce member

Date

Personnel Specialist

Date

Executive Director

Date

# Exhibit 3

## NEW ALLIANCE COUNSELING SERVICES

## *Job Description*

PART A.  IDENTIFICATION, DUTIES/RESPONSIBILITIES, AND TASK INVENTORY

| 1. Position Title<br>**E&T – Certified Peer Counselor** | 2. Type of position:    [X] Salaried, regular.;    [] Salaried, part time (% FTE ____);<br>[] Hourly, regular    [] Hourly, extra<br>**Fair Labor Standards Act Status**: [ ]Exempt Position  [X]Non-Exempt Position |
|---|---|

| 3. Work address    Street Address & City    Phone<br>**Alliance E & T, 982 E Columbia Ave. STE 201, Colville, WA 99114-3316    (509) 685-5000** |
|---|

| 4. Name & Title of Supervisor<br>Todd Johnson, E&T Treatment Coordinator |
|---|

| 5. Name of Employee<br>**Stephanie Raskin** | 6 Agency Employee No.<br>739 |
|---|---|

7. What is the function or service of your work unit?

The Alliance E&T will provide inpatient evaluation and treatment services 24 hours per day, 7 days per week for people with acute symptoms of a mental disorder.  Those with immediate mental health needs will receive timely, focused, individualized services from healthcare professionals experienced in psychiatric evaluation and providing acute psychiatric emergency care.  Services will include evaluation, stabilization, and integrated treatment provided by or under the direction of licensed psychiatrists, nurses and other behavioral health professionals and/or Certified Nursing Assistants (CNA).

ESSENTIAL DUTIES/RESPONSIBILITIES

Provide a general statement of each major duty or responsibility you have and list the task(s) involved in accomplishing each one.  Indicate the percent of time that is spent on each major duty or responsibility and the frequency of each.
FREQUENCY should be coded as follows:  D=Daily, W=Weekly, M=Monthly, Q=Quarterly, A=Annually, SA=Semi-annually

| DUTY/RESPONSIBILITY NO.<br>1 | | Statement of duty/responsibility: |
|---|---|---|
| Percent<br>60% | Frequency<br>Daily | **Promote community integration, resilience and quality of life objectives with clients and prompt decreased stigmatization of mental illness.** |

Tasks involved in fulfilling above duty/responsibility:

1.  Serve as a client advocate and provide client information and peer support at the E&T.
2.  Provide a wide range of activities to assist individuals admitted to the E&T with exercising control over their own life and recovery process through developing self-advocacy and natural supports, restoring community living skills and promoting socialization and self-sufficiency
3.  Use the sharing of their one's own life experiences related to mental illness to build alliances that enhance the ability of individuals admitted to the E&T to function and progress in their recovery/resiliency.
4.  Foster the understanding of mental health as an essential element of one's overall health; assist individuals admitted to the E&T with learning that mental illness is a condition from which people can and do recover. Help individuals understand that recovery from mental illness includes regaining a sense of purpose and control over one's life that overcomes, to the extent possible, limitations imposed by the illness.
5.  Emphasize the use of recovery-oriented attitudes and strategies when working with individuals at the E&T. Recovery-oriented approaches are those that provide opportunities for individuals to manage their mental illness, rebound from adversity, trauma, tragedy, threats, and/or other stresses, maintain independence, and live productive lives.
6.  Attend treatment team meetings as an integral member to create or further develop recovery plans and provide on-going support and promote care plan goals and objectives that meet the individual's needs.
7.  Identify services and engage in activities the promote recovery and which lead to meaning and purpose.
8.  Provide individual and group services (appropriate to certification level) for individuals at the E&T including facilitation of Wellness Recovery Action Plan and related recovery groups.
9.  Provide face to face support to individuals admitted to the E&T in order to inspire hope and promote wellness and recovery.

(Continued)

| DUTY/RESPONSIBILITY NO. 1 (Continued) | | Statement of duty/responsibility: |
|---|---|---|
| Percent 60% | Frequency Daily | **Promote community integration, resilience and quality of life objectives with clients and prompt decreased stigmatization of mental illness.** |

Tasks involved in fulfilling above duty/responsibility:

10. Support discharge planning as identified by individuals admitted to the E&T with the treatment team by providing community resources as appropriate.
11. Assist in facilitating the Diversion Activity Programs on the E&T unit.
12. Ensure that all required paperwork is completed in a timely manner with clear, timely communication to the treatment team.
13. Provides clear communication to all members of the treatment team to ensure integration of care, safe management, and quality outcomes for all admitted to the E&T.
14. Establish and maintain a good working relationship with all NEWACS staff.
15. Comply with all federal, state and local laws including WAC requirements governing Evaluation and Treatment facilities and Peer Counseling services.
16. Abide by all NEWACS policies and procedures and maintain the security of NEWACS Data Systems.
17. In order to meet the minimum requirements of this position and the essential duties specified herein, the employee must spend a majority of his/her work time and perform a majority of his/her work duties in the primary location of the Alliance E&T facility during assigned shifts.
18. Other duties as assigned by supervisor.

| DUTY/RESPONSIBILITY NO. 2 | | Statement of duty/responsibility: |
|---|---|---|
| Percent 35% | Frequency Daily | **Provide supervision and observation of patients admitted to Alliance E & T psychiatric inpatient services.** |

Tasks involved in fulfilling above duty/responsibility:

1. Monitor patient's activities, behaviors and statements to ensure a safe and a supportive healing environment.
2. Provide emotional support and opportunities for socialization for consumers as directed by the individualized treatment plan.
3. Provide supervision and observation of clients, with assistance nursing team, during group sessions and activities.
4. Report to the shift charge nurse any behaviors or statements that suggest a safety concern for the client or others and document in the EMR.
5. Provide supportive direction to ensure client compliance with "Rules of Conduct" for the E & T.
6. Monitor consumer interactions with other client's and visitors to ensure safety. Ensure compliance with agency policy/procedures governing visitors.
7. Maintain professional and helpful relationship with persons admitted to the E & T while adhering to the NEWACS Code of Ethics, agency policy/procedure on "Employee/Consumer Relations at the E & T," and avoiding "dual relationships" with current and former clients of the E & T.
8. Maintain and enhance customer service to ensure both external and internal customers of Alliance E & T have a positive experience.

| DUTY/RESPONSIBILITY NO. 2 | | Statement of duty/responsibility: |
|---|---|---|
| Percent 5% | Frequency Monthly | **Attend agency meetings and clinical supervision.** |

1. Attend treatment team meetings.
2. Participate in staff meetings relevant to work assignment.
3. Attend in-service trainings (internal & external) as needed to enhance professional skills or meet requirements of employer and/or certification.
4. Ensure that all licenses and certification are current.
5. Responsible for all assigned and annual trainings provided in Relias Learning (online training).

## PERSONAL QUALIFICATIONS/CREDENTIALS

This information will be used to determine/validate minimum qualification requirements of the position. Provide NEWACS with the education level, degree(s), major area of study, certifications, and number of years' experience.

- Agency Affiliated Counselor certification through the Washington State Department of Health.
- A consumer, or past consumer of mental health services - history of serious mental illness strongly preferred;
- Certified Peer Counselor as defined by the Washington State Mental Health Division (training and certification can occur following hire);
- High school diploma or GED certification preferred;
- Must have good written & oral communication skills and be able to complete administrative & clinical records. Computer literacy desirable – clinical software used.
- Must have driver's license, vehicle insurance, & able to use own vehicle if agency vehicle is not available.
- Abstract of driving record for past three years required.
- Satisfactory criminal history backgrounds check results are a condition of employment.

**PART B. SUPERVISION and WORKING ENVIRONMENT**

| 1. RESPONSIBILITY FOR MANAGEMENT OF OTHER PERSONS | Individual's responsibility for management of other persons is: (check all that apply)<br>☒ none<br>☐ determines goals and objectives of work unit<br>☐ divides total work load of the work unit into segments and determine who will perform each segment<br>☐ completes a formal (written) evaluation of persons in the work unit<br>☐ trains and/or motivates persons in the work unit<br>☐ holds staff advisory position which does not lend itself to management of others | |
|---|---|---|
| RESPONSIBILITY FOR DIRECT SUPERVISION OF THE FOLLOWING PERSONS/POSITIONS | | |
| NAME | CLASSIFICATION TITLE OF PERSON WHO IS SUPERVISED | FTE% |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| INDIRECT SUPERVISION (see instructions)  Total number of positions indirectly supervised | | |
| 2. HAZARDOUS WORKING CONDITIONS | Unusual or hazardous working conditions related to performance of duties: 1. Danger of client assaults/violence. 2. Exposure to Bloodborne Pathogens. 3. Travel on winter roads. 4. Exposure to traumatic incidents. 5. Repetitive movements associated with keyboard work and other related job duties. | |
| | Precautionary measures taken to avoid those unusual or hazardous working conditions: 1. Police/staff presence PRN. 2. Staff safety training. 3. Advisories to 3rd party, e.g., 911. 4. Ergonomic workstations. | |
| | Frequency of occurrence of unusual or hazardous working conditions: Varies_____ hours per day; or, _____ hours per week; or, other VARIABLE | |

All information on this Job Description is true, accurate, and a complete description of my duties and responsibilities.
Signature of Employee:_____ Date_____

All information on this Job Description is true and accurate and is a complete description of the duties and responsibilities assigned to the position.
Supervisor's signature: _____ Date _____

All information on this Job Description is a true and accurate reflection of the duties and responsibilities assigned to the position in relation to the overall goals and objectives of the agency.

Signature of
Agency Head or Designee: _____ Date _____

# Exhibit 4

# Northeast Washington Alliance Counseling Services
## Performance Review

**Employee:** Stephanie Raskin    **Reviewer:** Todd Johnson

**Job Title:** __Peer Counselor_____    **Review Period:** 9/2017 to 9/2018

# I. *EVALUATION OF PERFORMANCE*:

---

### 1. *Job Performance* (Consider general mastery of specific job duties as defined on the job description):

**Employee Self-Rating**
- ☐ Unsatisfactory: Unable to perform duties; many errors; slow
- ☐ Needs Improvement: Needs to improve in fundamental skills
- ☐ Meets Expectations: Performs routine tasks satisfactorily.
- ☒ Excellent: Performs duties effectively & efficiently; creative & adaptive
- ☐ Outstanding: Exceptional in every skill required for the position.

**Supervisor Rating**
- ☐ Unsatisfactory: Unable to perform duties; many errors; slow.
- ☐ Needs Improvement: Needs to improve in fundamental skills.
- ☐ Meets Expectations: Performs routine tasks satisfactorily.
- ☒ Excellent: Performs duties effectively & efficiently; creative & adaptive.
- ☐ Outstanding: Exceptional in every skill required for the position.

---

### 2. *Job Knowledge* (Consider whether individual has technical expertise and is able to apply the knowledge to duties on his/her job description):

**Employee Self-Rating**
- ☐ Unsatisfactory: Lacks knowledge to succeed in most job duties
- ☐ Needs Improvement: Doesn't always know what to do.
- ☐ Meets Expectations: Has appropriate knowledge to get job done
- ☒ Excellent: Strong job knowledge; exceeds what is required.
- ☐ Outstanding: Complete mastery of job; wealth of knowledge.

**Supervisor Rating**
- ☐ unsatisfactory: Lacks knowledge to succeed in most job duties
- ☐ Needs Improvement: Doesn't always know what to do.
- ☐ Meets Expectations: Has appropriate knowledge to get job done
- ☒ Excellent: Strong job knowledge; exceeds what is required.
- ☐ Outstanding: Complete mastery of job; wealth of knowledge.

---

### 3. *Productivity* (Consider how well individual meets the productivity expectations of his/her job description):

**Employee Self-Rating**
- ☐ Unsatisfactory: Consistently below standard; poor quality.
- ☐ Needs Improvement: Quantity is acceptable but low; low quality.
- ☐ Meets Expectations: Performs w/in standard & good quality.
- ☒ Excellent: Above-average productivity; diligent.
- ☐ Outstanding: Highly productive, efficient w/ great quality.

**Supervisor Rating**
- ☐ Unsatisfactory: Consistently below standard; poor quality.
- ☐ Needs Improvement: Quantity is acceptable but low; low quality.
- ☐ Meets Expectations: Performs w/in standard & good quality.
- ☒ Excellent: Above-average productivity; diligent.
- ☐ Outstanding: Highly productive, efficient w/ great quality.

---

### 4. *Oral Communication Skills* (Consider individual's ability to organize and express ideas while keeping others informed):

**Employee Self-Rating**
- ☐ Unsatisfactory: Withholds information, confusing, indirect.
- ☐ Needs Improvement: Doesn't keep others well informed, unclear.
- ☐ Meets Expectations: Understandable, usually communicates well.
- ☒ Excellent: Clear, prepared, and direct communication.
- ☐ Outstanding: Thoughtful, timely, persuasive, articulate and informative.

**Supervisor Rating**
- ☐ Unsatisfactory: Withholds information, confusing, indirect
- ☐ Needs Improvement: Doesn't keep others well informed, unclear.
- ☒ Meets Expectations: Understandable, usually communicates well.
- ☐ Excellent: Clear, prepared, and direct communication.
- ☐ Outstanding: Thoughtful, timely, persuasive, articulate and informative.

---

Def NEWACS  00306

---

**5. _Paperwork/Data Entry_** (Consider how well individual completes paperwork/data entry, etc., related to specific job duties—including timeliness, accuracy, completeness, etc.):

**Employee Self-Rating**
- ☐ Unsatisfactory: Always late, numerous errors, incomplete/inaccurate
- ☐ Needs Improvement: Unclear, data mistakes; grammatical errors; misses the point
- ☐ Meets Expectations: Clear writing with few errors; conveys information clearly
- ☒ Excellent: Quick, clear, correct, thorough
- ☐ Outstanding: Exception paperwork always on time.

**Supervisor Rating**
- ☐ Unsatisfactory: Always late, numerous errors, incomplete/inaccurate
- ☐ Needs Improvement: Unclear, data mistakes; grammatical errors; misses the point
- ☐ Meets Expectations: Clear writing with few errors; conveys information clearly
- ☒ Excellent: Quick, clear, correct, thorough
- ☐ Outstanding: Exception paperwork always on time.

---

**6. _Leadership/Teamwork_** (Consider individual exhibits confidence in self & others; inspires trust/respect, motivates others to perform well, shows courage to take action):

**Employee Self-Rating**
- ☐ Unsatisfactory: takes over/dominates others, never involves others
- ☐ Needs Improvement: Fails to inform others; insecure in front of others
- ☐ Meets Expectations: Motivate and directs others appropriately
- ☒ Excellent: Has confidence of peers; assertive, firm, and fair
- ☐ Outstanding: Motivates others for excellence; builds team spirit

**Supervisor Rating**
- ☐ Unsatisfactory: takes over/dominates others, never involves others
- ☐ Needs Improvement: Fails to inform others; insecure in front of others
- ☒ Meets Expectations: Motivate and directs others appropriately
- ☐ Excellent: Has confidence of peers; assertive, firm and fair
- ☐ Outstanding: Motivates others for excellence; builds team spirit

---

**7. _Professionalism_** (Consider individual's dedication, integrity, loyalty, ethics):

**Employee Self-Rating**
- ☐ Unsatisfactory: Serious errors in judgment; offensive
- ☐ Needs Improvement: Cuts corners under pressure; lacks good judgment
- ☒ Meets Expectations: No complaints by others; rarely makes judgment errors
- ☐ Excellent: Respected and listened to by coworkers
- ☐ Outstanding: Honest/ethical; balances formally with friendly

**Supervisor Rating**
- ☐ Unsatisfactory: Serious errors in judgment; offensive
- ☐ Needs Improvement: Cuts corners under pressure; lacks good judgment
- ☒ Meets Expectations: No complaints by others; rarely makes judgment errors
- ☐ Excellent: Respected and listened to by coworkers
- ☐ Outstanding: Honest/ethical; balances formally with friendly

---

**8. _Customer Service_** (Customers includes patients/consumer, co-workers, referral sources, other professionals, vendors, etc. Displays courtesy & sensitivity, manages difficult/emotional customers, responds promptly to customer needs; seeks customer feedback to improve service):

**Employee Self-Rating**
- ☐ Unsatisfactory: Frequently impolite, weak skills with customers
- ☐ Needs Improvement: Gets annoyed with customers; sarcastic
- ☐ Meets Expectations: usually competent with customers; courteous
- ☒ Excellent: Customer relations is a strength; graceful under pressure
- ☐ Outstanding: Wonderful at customer relations; many happy customers

**Supervisor Rating**
- ☐ Unsatisfactory: Frequently impolite, weak skills with customers
- ☐ Needs Improvement: Gets annoyed with customers; sarcastic
- ☒ Meets Expectations: usually competent with customers; courteous
- ☐ Excellent: Customer relations is a strength; graceful under pressure
- ☐ Outstanding: Wonderful at customer relations; many happy customers

---

**9. _Attendance & Punctuality_** (Considers scheduling of time off in advance, begins/ends work on time, keeps absences within guidelines, ensures work responsibilities are covered when absent, arrives at appointments and meetings on time, etc.):

**Employee Self-Rating**
- ☐ Unsatisfactory: Poor attendance; breaks are too long/frequent; not dependable
- ☒ Needs Improvement: Consistently uses all sick days; takes long breaks
- ☐ Meets Expectations: Not used more than allotted sick days
- ☐ Excellent: Good attendance; rarely misses work
- ☐ Outstanding: Always on time; great attendance record

**Supervisor Rating**
- ☐ Unsatisfactory: Poor attendance; breaks are too long/frequent; not dependable
- ☒ Needs Improvement: Consistently uses all sick days; takes long breaks
- ☐ Meets Expectations: Not used more than allotted sick days
- ☐ Excellent: Good attendance; rarely misses work
- ☐ Outstanding: Always on time; great attendance record

---

Def NEWACS 00307

**10.  *Personal Appearance*** (Dresses appropriately for position, keeps self-well-groomed)

**Employee Self-Rating**
- ☐ Unsatisfactory: Disheveled and unclean; shows poor image for our agency
- ☐ Needs Improvement: Sloppy; others have complained about grooming
- ☒ Meets Expectations: Comes to work properly attired; clean/professional
- ☐ Excellent: Dresses properly for all business occasions
- ☐ Outstanding: Impeccable dress and grooming

**Supervisor Rating**
- ☐ Unsatisfactory: Disheveled and unclean; shows poor image for our agency
- ☐ Needs Improvement: Sloppy; others have complained about grooming
- ☒ Meets Expectations: Comes to work properly attired; clean/professional
- ☐ Excellent: Dresses properly for all business occasions
- ☐ Outstanding: Impeccable dress and grooming

## II. *OVERALL PERFORMANCE RATING*:

**Employee Self-Rating:**   ☐ Unsatisfactory ☐ Needs Improvement ☒ Satisfactory ☐ Excellent ☐ Outstanding

**Supervisor Rating**   ☐ Unsatisfactory ☐ Needs Improvement ☒ Satisfactory ☐ Excellent ☐ Outstanding

**Endorsing Official's Rating** ☐ Unsatisfactory ☐ Needs Improvement ☐ Satisfactory ☐ Excellent ☐ Outstanding

## III. *EMPLOYEE'S REPORT OF PERFORMANCE ACCOMPLISHMENTS THIS YEAR:* Stephanie reported that she has learned how to meet patients' needs while complying with the facility rules.  She reports being trained in CBTp and co-facilitate a CBTp group at the E&T and outpatient setting in Chewelah Office.   She reports having gotten more comfortable sharing story with patients.  She reports having set up groups to give them opportunity to self-reflect, get their minds off of stressful situations, and engage in a supportive group environment.

Def NEWACS  00308

## IV. *EMPLOYEE'S APPRAISAL OF AREAS FOR PERFORMANCE IMPROVEMENT:* Stephanie reports that "I need to work on my professionalism and make better decisions. I need to not use every bit of PTO as soon as I get it and let it build up. I need to not take things personally and look for alternate explanations for situations."

## V. *SUPERVISOR'S COMMENTS (Include employee accomplishments, strengths, areas needing improvement, and or explanation of any category with rating below "Meets Expectations"):* Stephanie, you have made a lot of progress and growth with personal goals, specifically, having appropriate boundaries with staff and patients as of the last 2-3 months, however, for this performance review, I have to incorporate the entire year, otherwise I would have given higher reviews in some categories if I was only looking things as of the last 2-3 months. A real strength for you is that you are very invested in feedback, and accept feedback well. You are invested in patient care and strive for excellence and growth. You know your job duties very well and perform them well. Past struggles that I have noticed mostly pertain to boundary

Def NEWACS 00309

issues with staff and patients. Continue to focus on the job itself and not get caught up in matters that don't pertain to the job. Also, it will be important to not use PTO as frequently as you do, as it will be important to save some PTO for emergencies.

Job Performance: Stephanie does a great job providing groups for patients. She also does great job spending time on the milieu patient focused.

Job Knowledge: Stephanie has a good understanding of her job and meeting patient needs. There are no areas for correction.

Productivity: Stephanie is always willing to take on assigned duties. She is constantly working to increase her patient services.

Oral Communications: Stephanie is able to communicate with both staff and patients. Her observations of patients' needs/behaviors are evident during daily rounds with treatment team. Historically, you have exhibited some difficulty expressing appropriately necessary patient information; often time's pertinent information is missed within the context of the story you verbalize to the team. I urge you to identify only pertinent information about the patient's current condition and avoid "story telling" when discussing your role within the team.

Written Communications: Stephanie is able to document appropriately her group notes. Her documentation provides a clear picture of the patient's needs.

Leadership/Teamwork & Professionalism: Stephanie is a core member of the treatment team. She takes on duties without complaint and supports her peers when asked. Also, this is an area that is a work in progress and continue to need self-monitoring and not engage in non-work related issues with work peers. Another area of growth will be to identify a weakness which tends to be taking things personally; don't need to be friends with everyone to be effective – not take things that patient's say personally.

Customer Service: Stephanie does great job of working with the patients to meet their needs.

Attendance & Punctuality: Stephanie's attendance is area that requires growth. She has used unplanned time-off frequently.

Personal Appearance: Stephanie is always dressed appropriately.

## VI. *Employee Development Plan (To be completed by supervisor with input from employee. Describe training goals, continuing Education Courses, etc., to help employee progress with professional development)*: Stephanie to ensure that she completes all required trainings (cultural training, safety training, privacy and security training). Make sure to reach out to management in the proper order, and become certified in WRAP. Make sure always has enough PTO available for emergencies, and continue to self-monitor healthy boundaries with staff and patients. Stephanie reports that she wants to "make better decisions; and no more write-ups."

Def NEWACS 00310

## VII. SUPERVISOR'S SIGNATURE

_8/14/18_

Supervisor's Signature/Date

## VIII. EMPLOYEE ACKNOWLEDGMENT:

I have reviewed this evaluation and **wish** / **do not wish** to provide written comments.

Employee Signature/Date

Def NEWACS  00311

# Northeast Washington Alliance Counseling Services
## Performance Review

**Employee:** Stephanie Raskin          **Reviewer:** _____ Anahlise Pond _____

**Job Title:** ____ Peer Counselor ____     **Review Period:** September 2019 – November 2019

# I. *EVALUATION OF PERFORMANCE*:

## 1. *Job Performance* (Consider general mastery of specific job duties as defined on the job description):

**Employee Self-Rating**
- ☐ Unsatisfactory: Unable to perform duties; many errors; slow
- ☐ Needs Improvement: Needs to improve in fundamental skills
- ☐ Meets Expectations: Performs routine tasks satisfactorily.
- ☒ Excellent: Performs duties effectively & efficiently; creative & adaptive
- ☐ Outstanding: Exceptional in every skill required for the position.

**Supervisor Rating**
- ☐ Unsatisfactory: Unable to perform duties; many errors; slow.
- ☐ Needs Improvement: Needs to improve in fundamental skills.
- ☐ Meets Expectations: Performs routine tasks satisfactorily.
- ☒ Excellent: Performs duties effectively & efficiently; creative & adaptive
- ☐ Outstanding: Exceptional in every skill required for the position.

## 2. *Job Knowledge* (Consider whether individual has technical expertise and is able to apply the knowledge to duties on his/her job description):

**Employee Self-Rating**
- ☐ Unsatisfactory: Lacks knowledge to succeed in most job duties
- ☐ Needs Improvement: Doesn't always know what to do.
- ☐ Meets Expectations: Has appropriate knowledge to get job done
- ☐ Excellent: Strong job knowledge; exceeds what is required.
- ☒ Outstanding: Complete mastery of job; wealth of knowledge.

**Supervisor Rating**
- ☐ Unsatisfactory: Lacks knowledge to succeed in most job duties
- ☐ Needs Improvement: Doesn't always know what to do.
- ☐ Meets Expectations: Has appropriate knowledge to get job done
- ☒ Excellent: Strong job knowledge; exceeds what is required.
- ☐ Outstanding: Complete mastery of job; wealth of knowledge.

## 3. *Productivity* (Consider how well individual meets the productivity expectations of his/her job description):

**Employee Self-Rating**
- ☐ Unsatisfactory: Consistently below standard; poor quality.
- ☐ Needs Improvement: Quantity is acceptable but low; low quality.
- ☒ Meets Expectations: Performs w/in standard & good quality.
- ☐ Excellent: Above-average productivity; diligent.
- ☐ Outstanding: Highly productive, efficient w/ great quality.

**Supervisor Rating**
- ☐ Unsatisfactory: Consistently below standard; poor quality.
- ☐ Needs Improvement: Quantity is acceptable but low; low quality.
- ☒ Meets Expectations: Performs w/in standard & good quality.
- ☐ Excellent: Above-average productivity; diligent.
- ☐ Outstanding: Highly productive, efficient w/ great quality.

## 4. *Oral Communication Skills* (Consider individual's ability to organize and express ideas while keeping others informed):

**Employee Self-Rating**
- ☐ Unsatisfactory: Withholds information, confusing, indirect.
- ☐ Needs Improvement: Doesn't keep others well informed, unclear.
- ☐ Meets Expectations: Understandable, usually communicates well.
- ☒ Excellent: Clear, prepared, and direct communication.
- ☐ Outstanding: Thoughtful, timely, persuasive, articulate and informative.

**Supervisor Rating**
- ☐ Unsatisfactory: Withholds information, confusing, indirect
- ☐ Needs Improvement: Doesn't keep others well informed, unclear.
- ☐ Meets Expectations: Understandable, usually communicates well.
- ☒ Excellent: Clear, prepared, and direct communication.
- ☐ Outstanding: Thoughtful, timely, persuasive, articulate and informative.

Def NEWACS 00300

### 5. *Paperwork/Data Entry* (Consider how well individual completes paperwork/data entry, etc., related to specific job duties—including timeliness, accuracy, completeness, etc.):

**Employee Self-Rating**
- [ ] Unsatisfactory: Always late, numerous errors, incomplete/inaccurate
- [ ] Needs Improvement: Unclear, data mistakes; grammatical errors; misses the point
- [ ] Meets Expectations: Clear writing with few errors; conveys information clearly
- [ ] Excellent: Quick, clear, correct, thorough
- [x] Outstanding: Exception paperwork always on time.

**Supervisor Rating**
- [ ] Unsatisfactory: Always late, numerous errors, incomplete/inaccurate
- [ ] Needs Improvement: Unclear, data mistakes; grammatical errors; misses the point
- [x] Meets Expectations: Clear writing with few errors; conveys information clearly
- [ ] Excellent: Quick, clear, correct, thorough
- [ ] Outstanding: Exception paperwork always on time.

### 6. *Leadership/Teamwork* (Consider individual exhibits confidence in self & others; inspires trust/respect, motivates others to perform well, shows courage to take action):

**Employee Self-Rating**
- [ ] Unsatisfactory: takes over/dominates others, never involves others
- [ ] Needs Improvement: Fails to inform others; insecure in front of others
- [x] Meets Expectations: Motivate and directs others appropriately
- [ ] Excellent: Has confidence of peers; assertive, firm, end fair
- [ ] Outstanding: Motivates others for excellence; builds team spirit

**Supervisor Rating**
- [ ] Unsatisfactory: takes over/dominates others, never involves others
- [ ] Needs Improvement: Fails to inform others; insecure in front of others
- [x] Meets Expectations: Motivate and directs others appropriately
- [ ] Excellent: Has confidence of peers; assertive, firm, and fair
- [ ] Outstanding: Motivates others for excellence; builds team spirit

### 7. *Professionalism* (Consider individual's dedication, integrity, loyalty, ethics):

**Employee Self-Rating**
- [ ] Unsatisfactory: Serious errors in judgment; offensive
- [ ] Needs Improvement: Cuts corners under pressure; lacks good judgment
- [x] Meets Expectations: No complaints by others; rarely makes judgment errors
- [ ] Excellent: Respected and listened to by coworkers
- [ ] Outstanding: Honest/ethical; balances formally with friendly

**Supervisor Rating**
- [ ] Unsatisfactory: Serious errors in judgment; offensive
- [ ] Needs Improvement: Cuts corners under pressure; lacks good judgment
- [x] Meets Expectations: No complaints by others; rarely makes judgment errors
- [ ] Excellent: Respected and listened to by coworkers
- [ ] Outstanding: Honest/ethical; balances formally with friendly

### 8. *Customer Service* (Customers includes patients/consumer, co-workers, referral sources, other professionals, vendors, etc. Displays courtesy & sensitivity, manages difficult/emotional customers, responds promptly to customer needs; seeks customer feedback to improve service):

**Employee Self-Rating**
- [ ] Unsatisfactory: Frequently impolite, weak skills with customers
- [ ] Needs Improvement: Gets annoyed with customers; sarcastic
- [x] Meets Expectations: usually competent with customers; courteous
- [ ] Excellent: Customer relations is a strength; graceful under pressure
- [ ] Outstanding: Wonderful at customer relations; many happy customers

**Supervisor Rating**
- [ ] Unsatisfactory: Frequently impolite, weak skills with customers
- [ ] Needs Improvement: Gets annoyed with customers; sarcastic
- [ ] Meets Expectations: usually competent with customers; courteous
- [x] Excellent: Customer relations is a strength; graceful under pressure
- [ ] Outstanding: Wonderful at customer relations; many happy customers

### 9. *Attendance & Punctuality* (Considers scheduling of time off in advance, begins/ends work on time, keeps absences within guidelines, ensures work responsibilities are covered when absent, arrives at appointments and meetings on time, etc.):

**Employee Self-Rating**
- [ ] Unsatisfactory: Poor attendance; breaks are too long/frequent; not dependable
- [x] Needs Improvement: Consistently uses all sick days; takes long breaks
- [ ] Meets Expectations: Not used more than allotted sick days
- [ ] Excellent: Good attendance; rarely misses work
- [ ] Outstanding: Always on time; great attendance record

**Supervisor Rating**
- [ ] Unsatisfactory: Poor attendance; breaks are too long/frequent; not dependable
- [x] Needs Improvement: Consistently uses all sick days; takes long breaks
- [ ] Meets Expectations: Not used more than allotted sick days
- [ ] Excellent: Good attendance; rarely misses work
- [ ] Outstanding: Always on time; great attendance record

Def NEWACS  00301

---

**10.** *Personal Appearance* (Dresses appropriately for position, keeps self well-groomed)

| **Employee Self-Rating** | **Supervisor Rating** |
|---|---|
| ☐ Unsatisfactory: Disheveled and unclean; shows poor image for our agency | ☐ Unsatisfactory: Disheveled and unclean; shows poor image for our agency |
| ☐ Needs Improvement: Sloppy; others have complained about grooming | ☐ Needs Improvement: Sloppy; others have complained about grooming |
| ☒ Meets Expectations: Comes to work properly attired; clean/professional | ☒ Meets Expectations: Comes to work properly attired; clean/professional |
| ☐ Excellent: Dresses properly for all business occasions | ☐ Excellent: Dresses properly for all business occasions |
| ☐ Outstanding: Impeccable dress and grooming | ☐ Outstanding: Impeccable dress and grooming |

---

## II. OVERALL PERFORMANCE RATING:

**Employee Self-Rating:**    ☐Unsatisfactory ☐ Needs Improvement ☒Satisfactory ☐Excellent ☐Outstanding

**Supervisor Rating**    ☐Unsatisfactory ☐ Needs Improvement ☒Satisfactory ☐Excellent ☐Outstanding

**Endorsing Official's Rating** ☐Unsatisfactory ☐ Needs Improvement ☒Satisfactory ☐Excellent ☐Outstanding

---

## III. EMPLOYEE'S REPORT OF PERFORMANCE ACCOMPLISHMENTS THIS YEAR:

I heard a few patients say I've really helped them and I've been told by the patients that they appreciate what I do.

I completed the WRAP training and have begun implementing it one on one with patients as appropriate.

I attended the Suicide Awareness and Prevention Training.

I have been teaching coping skills and set an example for the patients as to how they can hold a job, work within their communities and function on the outside in their community.

Def NEWACS 00302

## IV. EMPLOYEE'S APPRAISAL OF AREAS FOR PERFORMANCE IMPROVEMENT:

*I need to learn more about different diagnoses and how they present in our patients.*

*I need to learn more about de-escalation to assist patients in calming down when they are starting to amping up*

*I need to work on more effective communication, specifically with staff.*

*I need to learn more on how to help the patients self-advocate and ask for things for themselves instead of being a go-between.*

*I need to work on improving work place conflicts.*

## V. SUPERVISOR'S COMMENTS (Include employee accomplishments, strengths, areas needing improvement, and or explanation of any category with rating below "Meets Expectations"):

Job Performance: Stephanie displays great work in identifying activities that are therapeutic and helpful for their treatment. She has displayed compassion by sharing her story as appropriate to assist patients in their recovery.

Job Knowledge: Stephanie has displayed an on-going willingness to learn new skills and apply those skills to her interactions with patients. She has displayed an increased in understanding how to maintain appropriate boundaries as a peer counselor with patients and will ask for input as needed.

Productivity: Stephanie is constantly coming up with new ideas/activities for the patients and actively researches ways to assist them. She is helpful to other staff in the milieu and makes herself readily available to the patients for peer support whether one on one or as a group.

Oral Communications: Stephanie clearly communicates with her peers/other staff regarding information patients share that is related to treatment. She also readily shares insights she has as a peer counselor in team meeting so that patients may receive the best treatment. She has been checking in more frequently regarding suggested treatment ideas or with questions.

Written Communications: Stephanie completes documentation on an as needed basis in a timely

Def NEWACS  00303

fashion and has displayed a willingness to learn the new EMR system as well as increase her skills in DAP formatting. She would benefit from becoming more familiar and thorough in using a DAP formatting to capture important clinical information.

<u>Leadership/Teamwork & Professionalism:</u> Stephanie has displayed excellent team work skills and a consistent willingness to help her peers/colleagues. She has been quick to assist when agitated patients upset the milieu to maintain calm for other patients until the crises has passed. She has increased her skills in using/keeping firm boundaries with both staff and patients.

<u>Customer Service:</u> Stephanie has displayed excellent customer services in working with patients. She is sensitive and compassionate to their needs and will often voice a client focused and strengths based perspective in team meetings to help advocate for the client or help the client advocate for themselves. She would benefit from continuing to develop skills in maintain boundaries with staff and patients.

<u>Attendance & Punctuality:</u> Stephanie has improved in letting her supervisor(s) know when she will be absent from work for medical apts., illness, etc. She would benefit from continuing to work towards accruing a bank of PTO so that she does not have to request time off without pay or flex time as frequently.

<u>Personal Appearance:</u> Stephanie dresses appropriately, attends to her appearance and presents professionally for her job/position.

## VI. *Employee Development Plan* *(To be completed by supervisor with input from employee. Describe training goals, Continuing Education Courses, etc., to help employee progress with professional development)*:

**Relias Trainings to be completed within the year:**

- **Bipolar and Related Disorders**

- **De-escalating Hostile Clients**

- **Peer Support: The Basics and Beyond**

- **Anxiety Disorders among Adults**

- **Working with Difficult People**

Def NEWACS 00304

## VII. _SUPERVISOR'S SIGNATURE_

_Cynthia Pond_                    12-4-19

_Supervisor's Signature/Date_

## VIII. _EMPLOYEE ACKNOWLEDGMENT_:

I have reviewed this evaluation and **wish / do not wish** to provide written comments.

_____ , 12/4/19

_Employee Signature/Date_

Def NEWACS  00305

# Northeast Washington Alliance Counseling Services
## Performance Review

**Employee Name:**  Stephanie Raskin          **Reviewer:**  Martha Fairley

**Job Title:** Certified Peer Counselor          **Review Period:**  11/2019 - present

## I. *EVALUATION OF PERFORMANCE*:

### 1. *Job Performance* (Consider general mastery of specific job duties as defined on the PIQ)

**Employee Self-Rating**
- ☐ Unsatisfactory:  Unable to perform duties; many errors; slow
- ☐ Needs Improvement: Needs to improve in fundamental skills
- ☒ Meets Expectations: Performs routine tasks satisfactorily.
- ☐ Excellent: Performs duties effectively & efficiently; creative & adaptive
- ☐ Outstanding: Exceptional in every skill required for the position.

**Supervisor Rating**
- ☐ Unsatisfactory:  Unable to perform duties; many errors; slow.
- ☐ Needs Improvement: Needs to improve in fundamental skills.
- ☒ Meets Expectations: Performs routine tasks satisfactorily.
- ☐ Excellent: Performs duties effectively & efficiently; creative & adaptive.
- ☐ Outstanding: Exceptional in every skill required for the position.

### 2. *Job Knowledge* (Consider whether individual has technical expertise and is able to apply the knowledge to duties on his/her PIQ):

**Employee Self-Rating**
- ☐ Unsatisfactory: Lacks knowledge to succeed in most job duties
- ☐ Needs Improvement: Doesn't always know what to do.
- ☒ Meets Expectations: Has appropriate knowledge to get job done
- ☐ Excellent: Strong job knowledge; exceeds what is required.
- ☐ Outstanding: Complete mastery of job; wealth of knowledge.

**Supervisor Rating**
- ☐ Unsatisfactory: Lacks knowledge to succeed in most job duties
- ☒ Needs Improvement: Doesn't always know what to do.
- ☐ Meets Expectations: Has appropriate knowledge to get job done
- ☐ Excellent: Strong job knowledge; exceeds what is required.
- ☐ Outstanding: Complete mastery of job; wealth of knowledge.

### 3. *Productivity* (Consider how well individual meets the productivity expectations of his/her PIQ):

**Employee Self-Rating**
- ☐ Unsatisfactory: Consistently below standard; poor quality.
- ☐ Needs Improvement: Quantity is acceptable but low; low quality.
- ☒ Meets Expectations: Performs w/in standard & good quality.
- ☐ Excellent: Above-average productivity; diligent.
- ☐ Outstanding: Highly productive, efficient w/ great quality.

**Supervisor Rating**
- ☐ Unsatisfactory: Consistently below standard; poor quality.
- ☐ Needs Improvement: Quantity is acceptable but low; low quality.
- ☒ Meets Expectations: Performs w/in standard & good quality.
- ☐ Excellent: Above-average productivity; diligent.
- ☐ Outstanding: Highly productive, efficient w/ great quality.

### 4. *Oral Communication Skills* (Consider individual's ability to organize and express ideas while keeping others informed):

**Employee Self-Rating**
- ☐ Unsatisfactory: Withholds information, confusing, indirect.
- ☐ Needs Improvement: Doesn't keep others well informed, unclear.
- ☒ Meets Expectations: Understandable, usually communicates well.
- ☐ Excellent: Clear, prepared, and direct communication.
- ☐ Outstanding: Thoughtful, timely, persuasive, articulate and informative.

**Supervisor Rating**
- ☐ Unsatisfactory: Withholds information, confusing, indirect
- ☐ Needs Improvement: Doesn't keep others well informed, unclear.
- ☐ Meets Expectations: Understandable, usually communicates well.
- ☒ Excellent: Clear, prepared, and direct communication.
- ☐ Outstanding: Thoughtful, timely, persuasive, articulate and informative.

Def NEWACS  00293

**5.** *Paperwork/Data Entry* (Consider how well individual completes paperwork/data entry, etc., related to specific job duties—including timeliness, accuracy, completeness, etc.)

**Employee Self-Rating**
- ☐ Unsatisfactory: Always late, numerous errors, incomplete/inaccurate
- ☐ Needs Improvement: Unclear, data mistakes; grammatical errors; misses the point
- ☐ Meets Expectations: Clear writing with few errors; conveys information clearly
- ☒ Excellent: Quick, clear, correct, thorough
- ☐ Outstanding: Exception paperwork always on time.

**Supervisor Rating**
- ☐ Unsatisfactory: Always late, numerous errors, incomplete/inaccurate
- ☐ Needs Improvement: Unclear, data mistakes; grammatical errors; misses the point
- ☐ Meets Expectations: Clear writing with few errors; conveys information clearly
- ☒ Excellent: Quick, clear, correct, thorough
- ☐ Outstanding: Exception paperwork always on time.

**6.** *Leadership/Teamwork* (Consider individual exhibits confidence in self & others; inspires trust/respect, motivates others to perform well, shows courage to take action):

**Employee Self-Rating**
- ☐ Unsatisfactory: takes over/dominates others, never involves others
- ☐ Needs Improvement: Fails to inform others; insecure in front of others
- ☒ Meets Expectations: Motivate and directs others appropriately
- ☐ Excellent: Has confidence of peers; assertive, firm, and fair
- ☐ Outstanding: Motivates others for excellence; builds team spirit

**Supervisor Rating**
- ☐ Unsatisfactory: takes over/dominates others, never involves others
- ☐ Needs Improvement: Fails to inform others; insecure in front of others
- ☒ Meets Expectations: Motivate and directs others appropriately
- ☐ Excellent: Has confidence of peers; assertive, firm, and fair
- ☐ Outstanding: Motivates others for excellence; builds team spirit

**7.** *Professionalism* (Consider individual's dedication, integrity, loyalty, ethics):

**Employee Self-Rating**
- ☐ Unsatisfactory: Serious errors in judgment; offensive
- ☐ Needs Improvement: Cuts corners under pressure; lacks good judgment
- ☒ Meets Expectations: No complaints by others; rarely makes judgment errors
- ☐ Excellent: Respected and listened to by coworkers
- ☐ Outstanding: Honest/ethical; balances formally with friendly

**Supervisor Rating**
- ☐ Unsatisfactory: Serious errors in judgment; offensive
- ☐ Needs Improvement: Cuts corners under pressure; lacks good judgment
- ☒ Meets Expectations: No complaints by others; rarely makes judgment errors
- ☐ Excellent: Respected and listened to by coworkers
- ☐ Outstanding: Honest/ethical; balances formally with friendly

**8.** *Customer Service* (Customers includes patients/consumer, co-workers, referral sources, other professionals, vendors, etc. Displays courtesy & sensitivity, manages difficult/emotional customers, responds promptly to customer needs; seeks customer feedback to improve service)

**Employee Self-Rating**
- ☐ Unsatisfactory: Frequently impolite, weak skills with customers
- ☐ Needs Improvement: Gets annoyed with customers; sarcastic
- ☐ Meets Expectations: usually competent with customers; courteous
- ☒ Excellent: Customer relations is a strength; graceful under pressure
- ☐ Outstanding: Wonderful at customer relations; many happy customers

**Supervisor Rating**
- ☐ Unsatisfactory: Frequently impolite, weak skills with customers
- ☐ Needs Improvement: Gets annoyed with customers; sarcastic
- ☐ Meets Expectations: usually competent with customers; courteous
- ☒ Excellent: Customer relations is a strength; graceful under pressure
- ☐ Outstanding: Wonderful at customer relations; many happy customers

**9.** *Attendance & Punctuality* (Considers scheduling of time off in advance, begins/ends work on time, keeps absences within guidelines, ensures work responsibilities are covered when absent, arrives at appointments and meetings on time, etc.)

**Employee Self-Rating**
- ☐ Unsatisfactory: Poor attendance; breaks are too long/frequent; not dependable
- ☒ Needs Improvement: Consistently uses all sick days; takes long breaks
- ☐ Meets Expectations: Not used more than allotted sick days
- ☐ Excellent: Good attendance; rarely misses work
- ☐ Outstanding: Always on time; great attendance record

**Supervisor Rating**
- ☐ Unsatisfactory: Poor attendance; breaks are too long/frequent; not dependable
- ☒ Needs Improvement: Consistently uses all sick days; takes long breaks
- ☐ Meets Expectations: Not used more than allotted sick days
- ☐ Excellent: Good attendance; rarely misses work
- ☐ Outstanding: Always on time; great attendance record

Def NEWACS 00294

**10.** *Personal Appearance* (Dresses appropriately for position, keeps self well-groomed)

| Employee Self-Rating | Supervisor Rating |
|---|---|
| ☐ Unsatisfactory: Disheveled and unclean; shows poor image for our agency | ☐ Unsatisfactory: Disheveled and unclean; shows poor image for our agency |
| ☐ Needs Improvement: Sloppy; others have complained about grooming | ☐ Needs Improvement: Sloppy; others have complained about grooming |
| ☒ Meets Expectations: Comes to work properly attired; clean/professional | ☒ Meets Expectations: Comes to work properly attired; clean/professional |
| ☐ Excellent: Dresses properly for all business occasions | ☐ Excellent: Dresses properly for all business occasions |
| ☐ Outstanding: Impeccable dress and grooming | ☐ Outstanding: Impeccable dress and grooming |

## II. OVERALL PERFORMANCE RATING:

**Employee Self-Rating:** ☐ Unsatisfactory ☐ Needs Improvement ☒ Satisfactory ☐ Excellent ☐ Outstanding

**Supervisor Rating** ☐ Unsatisfactory ☐ Needs Improvement ☒ Satisfactory ☐ Excellent ☐ Outstanding

**Endorsing Official:** ☐ Unsatisfactory ☐ Needs Improvement ☒ Satisfactory ☐ Excellent ☐ Outstanding

## III. EMPLOYEE'S REPORT OF PERFORMANCE ACCOMPLISHMENTS THIS YEAR:

This year I started running a WRAP group for the patients. I started typing up notes again, engaged in several art activities with the patients, and been told by, or have cards and letters from, former patients that tell me I really helped them out. I share with them parts of my story that I feel will help motivate them and make them not feel so alone.

## IV. EMPLOYEE'S APPRAISAL OF AREAS FOR PERFORMANCE IMPROVEMENT:

I could improve in my note taking, not using so much of my PTO, getting along better with my co-workers, setting more firm boundaries with the patients, and not trying to be their friend so much and do more "counseling"

## V. SUPERVISOR'S COMMENTS (include employee accomplishments, strengths, areas needing improvement, and or explanation of any category with rating below "Meets Expectations"):

Stephanie is a Certified Peer Counselor at Alliance E&T. I have been her supervisor since February of 2020. As such, much of her performance from December 2019-January 2020 is unable to be included. A theme throughout Stephanie's employment at Alliance E&T has been a turnover of supervisors, which inevitably brings turnover of expectations and understandings. I do believe that while her role on paper with Alliance has been consistent, this turnover can reasonably lead to inconsistencies in her duties. In my experience, Stephanie's job performance meets

Def NEWACS 00295

expectations when she is aware of what those expectations are. Upon being asked to increase proactive client contacts and document a greater quantity of encounters, Stephanie quickly followed through with this and met the goal made for her (leading to 235 documented encounters in 2020 so far vs. 17 encounters in the second half of 2019). It will be a plan for the upcoming year to continue growing the skill of client engagement and proactive encounters (something that with time will bring productivity to "excellent"). Stephanie spends much of her day interacting with clients and creating activities without prompting. She provides worksheets and information to clients at their request and knows where/how to find this information with her own resourcefulness. I do believe that Stephanie has room for improvement in job knowledge. Stephanie's role is important to build a client's perception of their own ability to recover, and at times she seems to underestimate the significance and abilities of her role at the E&T. I have had multiple encounters with Stephanie where she presented lost in her purpose at the E&T without client initiation. "Developing self-advocacy and natural supports, restoring community living skills and promoting socialization and self-sufficiency," and "Support discharge planning as identified by individuals admitted to the E&T with the treatment team by providing community resources as appropriate." are two of the job factors I would like her to build upon and emphasize in order to reduce how often I hear Stephanie report that "Activities Director" would be a better title.

While Stephanie gave herself a rating of "meets expectations" for oral communication, I believe "excellent" is more appropriate. Stephanie communicates clearly and directly with the team, and has become more forthcoming with time. At the beginning of my time supervising Stephanie, she did seem to be lacking confidence of her feedback around team members. I have noticed Stephanie providing more and more information, often valuable during rounds. Stephanie has the opportunity to be around patients while they may feel more "at ease" on the unit (not under the watchful eye of an assessor), and therefore often has feedback regarding symptoms that may be hid from others. Stephanie keeps the team informed throughout the day, rather than waiting for rounds the next morning. I would like to see Stephanie continue this trend and continue to build her confidence as she communicates with both the team *and* the clients as she recognizes herself as a part of the treatment team.

Stephanie's entry of notes has been excellent. She has met her goal of multiple documented encounters each day and has been timely about completing same-day group notes. Stephanie has accepted any feedback regarding contents of her documentation and has grown more steadily near the clinical standards of her supervisor. Stephanie has completed 235 services from 1/1/20-12/14/20, as compared to 17 services in the second half of 2019, which seems to indicate a significant increase in thoughtful engagement.

Stephanie's teamwork and leadership meet expectations in that she participates appropriately in rounds and work activities. Stephanie's attitude toward work and while at work seem to have improved throughout the last year. There have been multiple factors throughout the last year having a significant impact on the morale of many, including coworker dynamics, turnover, and difficult clients. Stephanie did at times struggle to "ride the wave" of these difficulties, but has demonstrated increased resiliency for months in her confidence and attitude at work. I look forward to seeing more of this and having her model this behavior on the unit.

Stephanie's companionship and ability to relate to clients is often valued from patients at the E&T. While I agree that her customer service is excellent in that patients most often leave interactions with Stephanie feeling positive, this is also where I believe she has room to grow in professional boundaries. While Stephanie does not violate ethical boundaries in a legal or negligent way, she does struggle with being positive to the exclusion of "hard truths." While it may sound like learning to walk a tightrope, I would like Stephanie to learn how to relate to clients as a peer counselor while also remembering to challenge clients regarding their need for treatment, their serious mental illness, and supporting the plans of the treatment team. While learning this balance may be difficult, I do believe that Stephanie will find it is ultimately less exhausting when clients receive a consistent message from all team members rather than a mixture of appeasing and therapeutic feedback.

Stephanie needs improvement in the area of attendance and punctuality. Stephanie is constantly battling low PTO, consistently uses her allotted time, and at times her requests leave her no safeguard if she were to need to

Def NEWACS  00296

unexpectedly miss work due to illness/injury/emergency.

Stephanie's personal appearance meets the expectations that have been set by her previous supervisors. While Stephanie's attire is not consistent with the business/casual dress policy for much of NEWACS staff, her attire has not contained offensive messaging or led to complaints from staff or clients.

## VI. *Employee Annual Training Plan* *(To be completed by supervisor with input from employee. Describe training goals, continuing education courses, etc. to promote professional development, cultural competency, and/or clinical competency as related to the employee's* job description, level of education and experience*)*:

Stephanie's transcript through the on-line Relias Training Program for the past year is attached to this performance review. Stephanie has completed all agency required training for the past year to this point and has also completed trainings specific to peer support, stress management, and boundaries.

For the upcoming year, Stephanie will complete agency required annual training (e.g., Cultural Competence, Safety, etc.) and will work together with her supervisor to identify ongoing trainings that will boost her confidence in enforcing boundaries, proactively engaging clients in peer counselor activities, and understanding communication strategies for uncooperative individuals.

In addition, I would like Stephanie to be able to attend a training on providing WRAP services in a group format. This is something that was sought after this year, however any identified training for this had been cancelled by the circumstances of the pandemic.

## VII. *SUPERVISOR'S SIGNATURE*

*Supervisor's Signature/Date*

## VIII. *EMPLOYEE ACKNOWLEDGMENT*:

I have reviewed this evaluation and *wish* / *do not wish* to provide written comments.

*Employee Signature/Date*

Def NEWACS 00297

# Exhibit 5

509.685.5000

**From:** Roberta Brozik
**Sent:** Wednesday, October 9, 2019 3:35 PM
**To:** Stephanie R. Raskin <SRaskin@stevenscountywa.gov>
**Cc:** David Nielsen <dmnielsen@stevenscountywa.gov>; Sara DePonte <SDePonte@stevenscountywa.gov>; Pam Hofer <PHofer@stevenscountywa.gov>
**Subject:** FW: Clarification Questions

Hi Stephanie,

You are not on probation. Please see the below email from Sara DePonte regarding your other questions.

Thank you,

Roberta Brozik
Personnel Specialist
NEW Alliance Counseling Services
165 E Hawthorne Ave
Colville, WA 99114
509-685-0629
rbrozik@stevenscountywa.gov

**From:** Sara DePonte
**Sent:** Wednesday, October 9, 2019 3:15 PM
**To:** Roberta Brozik <rbrozik@stevenscountywa.gov>
**Cc:** Sara DePonte <SDePonte@stevenscountywa.gov>
**Subject:** RE: Clarification Questions

Hi Roberta,

1- Stephanie will receive her 2 year raise on 10/2/19
2- The only requirement now that FMLA is approved is Stephanie must make sure all time off that is FMLA related is marked as such on her PTO Requests. She must be very clear with her PTO or LWOP the reason for the absence. Stephanie will still need to follow all of the regular company leave policies. We do not require a doctor's note unless there is a question of validity of requested time off, or an absence greater than 3 days

Do you want me to send to Stephanie?

Thank You,

**Sara DePonte**
**Lead Accountant**
**Sdeponte@stevenscountywa.gov**
**NorthEast Washington Alliance Counseling Services**
**509-685-0612**

This message is intended for the sole use of the individual and entity to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended addressee nor authorized to receive for the intended addressee, you are hereby notified that you may not use, copy, disclose or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete the message. Thank you.

Def NEWACS 04690

**From:** David Nielsen
**Sent:** Wednesday, October 9, 2019 1:31 PM
**To:** Roberta Brozik <rbrozik@stevenscountywa.gov>; Sara DePonte <SDePonte@stevenscountywa.gov>; Pam Hofer <PHofer@stevenscountywa.gov>
**Subject:** Fwd: Clarification Questions

Roberta, can you look into this and make sure stephanie has the answers she needs.

Get Outlook for Android

---------- Forwarded message ----------
From: "Stephanie R. Raskin" <SRaskin@stevenscountywa.gov>
Date: Wed, Oct 9, 2019 at 12:50 PM -0700
Subject: Clarification Questions
To: "David Nielsen" <dmnielsen@stevenscountywa.gov>
Cc: "Pam Hofer" <PHofer@stevenscountywa.gov>

Good afternoon,

I have a few questions...

My 2 year anniversary was 10/2. First, I was told in the beginning of March that I was to be on probation for 6 months. It was scheduled to end in September. Am I still on probation, or what is the status of that? Also, in my hire letter is states that I am "eligible" for a raise at the 2 year mark. In light of my probationary status and LWOP, do you know if I'll be receiving said raise, or am I ineligible? Also, I am unsure as to how the whole FMLA thing works. Was the note from the ER Doctor sufficient or did I need something in addition? I asked the Doctor about filling out FMLA paperwork for being treated for depression and he was unsure as well. I know you have a lot on your plate at the moment (always?) so at your convenience. Thank you.

*Stephanie Raskin – Agency Affiliated Peer Counselor*

NEW Alliance Counseling Services
Evaluation & Treatment Facility
email: sraskin@stevenscountywa.gov
509.685.5000

5

Def NEWACS 04691

**Chewelah Community Health Center**
**518 East Clay Ave**
**Chewelah, WA  99109**
**(509) 935-8424  (509) 935-0478**

8/15/2018

Stephanie R. Raskin
**DOB**: 2/2/1979
975 1/2 N Elm
Colville,WA    99114

To Whom It May Concern:

Please excuse the above named patient:

___From work for Doctors appointment on _____.

___From school for Doctors appointment on _____.

_x__From work due to extended illness for the following dates:_8/15, 8/16,8/17_____.

___From school due to extended illness for the following dates: _____.

The above named patient may return to:

____Limited work activity on _____.

__x__Full work activity on _____8/18_____.

____Limited athletic activity on_____.

____Full athletic activity on _____.

____School on _____.

____Other _____.

Signed:

Maja Zugec MD

8/15/18

# Colville Community Health Center

358 N Main Street
Colville, WA 99114
(509) 684-1440
(509) 935-0478

08/30/2018

**Full Name:** Stephanie R. Raskin
**Date of Birth:** 02/02/1979
**Street:** 975 1/2 N Elm
**City/State/Zip:** Colville, WA 99114

To Whom It May Concern:

Please excuse the above named patient:

_____ From School for a Doctors appointment on _____.

_____ From Work for a Doctors appointment on _____.

__X___ From Work due to extended illness on the following dates: ___8/30/2018-9/2/2018___.

_____ From School due to extended illness on the following dates: _____.

The above named patient may return to:

___ Limited work activity on _____.

___ Full work activity on _____.

___ Limited athletic activity on _____.

___ Full athletic activity on _____.

___ School on _____.

___ Other _____.

Sincerely,

**Marty Malone PA-C**

Def NEWACS 04693



**GEICO**
geico.com®

**California Evidence of Liability Insurance**
1-800-841-3000

GEICO GENERAL INSURANCE COMPANY
PO BOX 509090    SAN DIEGO, CA 92150-9090

## Evidence of Insurance

Here are your Evidence of Liability Insurance Cards. One card must be carried in the proper insured vehicle. Proof of insurance is required to register or renew the registration of your vehicle. A law enforcement officer can ask you to prove that you have liability insurance meeting the basic requirements of California law.

A violation of these requirements can result in a fine of up to:

$1,000 for the first time
$2,000 for additional times

Also, a judge can have your vehicle impounded. False proof of insurance may result in a fine up to $750 and 30 days in prison.

Due to space limitations on the ID card, only the Named Insured and the Co-insured are listed. For a full list of drivers covered under this policy, please reference the Drivers section of your Declarations Page, which is included with your insurance packet.

If you would like additional ID cards you can go online to **geico.com** or call us at **1-800-841-3000**.

## What to do at the time of an accident.

- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved.
  Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

U-4-CA (11-09)

Def NEWACS  04694

**Todd Johnson**

| | |
|---|---|
| **From:** | Grace Harvey |
| **Sent:** | Friday, April 6, 2018 3:50 PM |
| **To:** | Todd Johnson |
| **Subject:** | Quick word about Peer support |

Renee just told me there was some favoritism happening between Stephanie and ████. Apparently there were markers brought in or purchased by Stephanie that were only to be used during groups or by ████. Just thought you should be aware. ☺

Grace Harvey RN
Alliance E&T
Nurse Manager
gharvey@stevenscountywa.gov
(509)685-5002 office
(509)690-2604 cell

Discuss?)
4/10/18

1

Def NEWACS 04695

**Todd Johnson**

| | |
|---|---|
| **From:** | Grace Harvey |
| **Sent:** | Friday, April 6, 2018 3:55 PM |
| **To:** | Todd Johnson |
| **Subject:** | Another thing |

Apparently she was also letting ▮▮▮ play with her keys. I won't be here next week, otherwise I would talk to her about it. ☹

Grace Harvey RN
Alliance E&T
Nurse Manager
gharvey@stevenscountywa.gov
(509)685-5002 office
(509)690-2604 cell

Def NEWACS 04696

4/11/18   Supervision w/ Stephanie    10:00-10:05
- due to memory concerns w/ medication discussed:
      no longer administering scissors @ group time
      due to concerns of forgetting to put scissors away
      + risks associated w/ patient
- discussed Stephanie coordinating w/ tech prior to
      group to have tech manage scissors for group
      requiring scissors

4/27/18              10min    3:05-3:15
      Discussed CH 1 of Group CBTp
            + what want to do for group

5/1/18        3 - 3:30
      Discussed today's group (CBTp)
            - Discussed strength's + ⊕'s
                  - Provide feedback on area's to work on
            - Provides training on Anasazi + writing
                  DAP Group notes

5/10/18        @ 3:10-3:40

            - Picture on Anasazi
                  → how to write group notes
            - Feedback on group (CBT) - prepare
                        for conference presentation
            - Boundaries w/ co-workers / patients

Def NEWACS  04697

4/3/18 Stephanie 2:35 pm - 2:50          — Convert to
                                            other form

boundaries
    - boundaries w/ → not talking
      about staff / clients w/ other
      staff / client
                → lots of ears listening

    - ways to communicate appropriate boundaries w/ clients


4/5/18 1:05 - 1:20 pm

    - boundaries of patient
        → how to verbalize to patient
        → what not to say to patients

Def NEWACS 04698

## Supervision Log
### 2017

Clinician: _Todd Johnson_    (Supervisor since _3/18_ )

*Please route to the Human Resources Manager at the end of the calendar year.*

| Date | Duration | Type (face-to-face, movi, telehealth, phone) | Notes (indicate "yes" or "no"—**do not route notes to the HR Department**) | Signature of Supervisor |
|------|----------|------|------|------|
| 3/13/18 | 25 min | F/F | Y | |
| 3/22/18 | 21 min | F/F | Y | |
| 4/3/18 | 15 min | F/F | Y | |
| 4/5/18 | 15 min | F/F | Y | |
| 4/9/18 | 10 min | Y  F/F | Y | |
| 4/27/18 | 10 min | Y  F/F | Y | |
| 5/1/18 | 30 min | F/F | Y | |
| 5/10/18 | 30 min | F/F | Y | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Def NEWACS  04699

**Todd Johnson**

| | |
|---|---|
| **From:** | Stephanie R. Raskin |
| **Sent:** | Thursday, July 19, 2018 3:22 PM |
| **To:** | Todd Johnson; Grace Harvey |
| **Subject:** | Policies |

I have re-read and understand the policies I was asked to review, Policy 2.48 Employee Conduct & Work Rules and Policy 2.51 Discrimination including Policy 2.51C that was provided in the written warning. I apologize and would like to reassure you both that going forward, I will act accordingly. Thank you.

*Stephanie Raskin – Agency Affiliated Peer Counselor*

NEW Alliance Counseling Services
Evaluation & Treatment Facility
**email: sraskin@stevenscountywa.gov**
509.685.5000

1

Def NEWACS 04700

## NEW ALLIANCE COUNSELING SERVICES
### SECURITY INCIDENT REPORT

| | | | |
|---|---|---|---|
| 1. | **Date of Report:** 6/11/18 | | |
| 2. | **Date, time & location of incident:** 6/9/18, Approx 2:30-3:00pm | | |
| 3. | **People involved:** Myself, Stephanie Raskin | | |
| 4. | **If not staff, name and contact information:** N/A | | |
| 5. | **Staff member who discovered incident:** Stephanie Raskin | | |
| 6. | **Summary of incident:** I was pulling out art supplies and must've set my keys on the table. Then they were gone. | | |
| 6. | **Date and time of discovery:** 6/9/18 Approx 2:30-3:00pm | | |
| 7. | **How was the incident discovered?** Went to lock a cabinet and noticed keys were not there. | | |
| 8. | **Findings:** Keys were not where I left them. | | |
| 9. | **Location of PHI Involved at time of incident:** Locked in nurses station | | |
| 10. | **Evidence that has been gathered:** Searched patients' rooms, all cabinets, all drawers. | | |
| 11. | **Did the incident involve PHI?** | ☐ Yes | ☒ No |
| 12. | **Type of data / information involved:** N/A | | |
| 13. | **Was information / data viewed or acquired?** | ☐ Yes | ☒ No |
| 14. | **Are parties involved HIPAA covered entities / BAs?** | ☒ Yes | ☐ No |
| 15. | **How many DSHS clients and non-DSHS clients were involved:** N/A | | |
| 16. | **Electronic devices containing DSHS information involved?** | ☐ Yes | ☒ No |
| 17. | **If so, what type of electronic storage? Was it encrypted?** N/A | | |
| 18. | **Was the incident deliberate or repeated disclosure or act?** | ☐ Yes | ☒ No |
| 19. | **Is notification to clients / external parties required?** | ☐ Yes | ☒ No |
| 20. | **What Level of risk of compromise exists?** ☐ Low ☐ Medium ☒ High | | |
| 21. | **What is the LoProCo severity rating?** ☐ Low ☐ Medium ☒ High | | |
| 22. | **Steps taken to respond to incident at the time it occurred:** Searched cabinets, drawers, back office, Bridgette's office, pockets, purse, patient rooms, car, locker. | | |

4562
Def NEWACS  04701

23. **Recommendations to prevent future occurrences (Sanctions, Mitigations):** *Wear keys on lanyard around neck so I don't accidentally set them down.*

24. **Date of employee(s) last HIPAA Privacy and Security training:** *A few months ago*

25. **Requirement to Add to Security Incident Log?**  ☐ Yes  ☐ No

26. **Police Report Number (Be sure to attach copy of report):** *N/A*

27. **Form Completed By:** *Stephanie Raskin*

28. **Name, address, telephone number, fax number, email address of primary point of contact for the incident:** *Stephanie Raskin 975 ½ N Elm, Colville, WA 99114/916-370-1038/sraskin@stevenscountywa.gov*

29. **HIPAA Security Officer Signature:**
   **Date of Signature:**

30. **Executive Director Signature:**
   **Date of Signature:**



**Stephanie Raskin**    ...

Mar 2 at 1:07pm · Colville, Washington · 🌐

I absolutely love my job. However, sometimes it really takes a toll and is heartbreaking. We had a patient that I really connected with and I worked really hard to help her but I have a gut feeling that as soon as she has the chance, she will attempt to take her own life and she'll succeed this time. We had a patient that came in violent and angry but completely turned around and I feel I played a small part in that. He was doing so well and was looking forward to starting his life over but he was released to law enforcement today because of some really bad decisions he made before coming to us while he was ill. He will be locked up for a long time. And then there's the patient I know from my past and it's so sad to see him so ill and the direction his life has taken. Tons of patients come and go and some I really bond with and care about. I care about all of them but there's a few here and there that stand out to me and I connect with for whatever reason. It's just hard. These 3 patients were all recent so it still gets to me. I need to learn how to not care so much, but that's not me. I don't know how to keep from being so emotionally invested.

 Like           Comment           Share

Def NEWACS 04703



This is to certify that
### Stephanie Raskin
has successfully completed
NEWACS HIPAA Security Training

Completed on: 3/13/2018          Hours: 0.00

Def NEWACS 04704

Def NEWACS 04705

# RELIAS LEARNING

This is to certify that
**Stephanie Raskin**
has successfully completed
**HIPAA Privacy**

Completed on: 3/13/2018                    Hours: 0.50

*Amy M Johnson MSN, RN*

Amy M Johnson MSN, RN, CPN
Director of Continuing Education
Relias Learning, LLC
111 Corning Road, Suite 250
Cary, North Carolina 27518

# Exhibit 6

**Roberta Brozik**

| | |
|---|---|
| **From:** | Roberta Brozik |
| **Sent:** | Thursday, August 20, 2020 9:13 AM |
| **To:** | Stephanie R. Raskin |
| **Subject:** | FMLA Paperwork |
| **Attachments:** | FMLA Doctor Certification-Job Description-Raskin, S..pdf; FMLA Eligibility Notice-Raskin, S..pdf |

Hi Stephanie,

Attached is your FMLA Eligibility Notice and the Doctor Certification with your job description.  Please print Doctor Certification and job description twice and take to both of your doctor for them to complete.  I will need the back by September 3, 2020.

If you have any questions please let me know.

Thank you,

Roberta Brozik
Personnel Specialist
NEW Alliance Counseling Services
165 E Hawthorne Ave
Colville, WA 99114
509-685-0629
rbrozik@stevenscountywa.gov

1

# Family and Medical Leave Act (FMLA) Request Form

## To be completed by employee

| Employee's Name | Department | Phone Number |
|---|---|---|
| Stephanie Rashin | E&T | 509-685-50## |

| Job Title | Employee ID |
|---|---|
| Peer Counselor | |

☐ Initial Application          Home Phone #: 916-370-1038

**Reason for Leave of Absence**

☑ Own illness (not work related)     ☐ Pregnancy disability
☐ Care for ill parent/spouse/child   ☐ Care for newborn/adopted child (Date of Birth/Placement)
☐ Other (specify)

**Answer all:**                    Yes  No
Do you have company medical insurance?    ☑   ☐
Do you have company dental insurance?     ☑   ☐

                                   Yes  No
Are you currently on another leave?       ☐   ☑
Have you or will you be filing a Disability insurance claim?   ☐   ☑

| Requested start date | Anticipated end date | Requested intermittent or reduced work schedule |
|---|---|---|
| 8/24/20 | | |

*An FMLA leave of absence is a leave without pay. Paid leave (using accrued sick time or vacation hours) shall be substituted for the unpaid leave in accordance with the Family Medical Leave Act Policy.*

| I understand that I am required to use accrued paid time off until leave concludes or accrued balance is depleted. Below is an estimate of paid time off available in my account. Hours | | Date Begins (mm/dd/yy) | Date Ends (mm/dd/yy) |
|---|---|---|---|
| 18 | Accrued sick leave | ? | ? |
| | Accrued vacation leave | | |

| Employee's Signature | Date |
|---|---|
| *(signature)* | 8/13/20 |

I understand that I am required to complete a FMLA Leave Certification of Health Care Provider form and submit the form to Human Resources before my leave commences. I understand that if my leave is approved, my time away from work will be charged against my 12 week leave maximum under FMLA. Upon approval of this requested leave, I am required to utilize all paid time available to me prior to going into an unpaid leave status. In the event that I go into an unpaid status while on leave, I understand that I must contact Human Resources to make arrangements to pay my portion of health insurance premiums.

I request the following forms for my FMLA leave of absence:

1. **Certification of Health Care Provider**: This form is to be completed by either my health care provider (if this leave is for my own serious health condition) or by my family member's health care provider (if this leave is for the serious health condition of a spouse, parent, or child). My physician must complete this entire form. *Failure to complete this form may delay or prevent my leave approval.*

2. **Continuation of Benefits While on FMLA Leave**: This is an agreement between my employer and myself to continue my benefits while on FMLA leave and a financial arrangement for my portion of health care premiums.

3. **Notification of FMLA Status (Approval/Denial)**: This is to notify me that my employer is designating the leave as FMLA leave and to inform me in writing of the specific expectations and obligations required by my employer under FMLA.

4. **Request to Return From FMLA Leave**: I should fill out the top portion of the form, notifying Human Resources of the date of my return. For my own serious health condition, the bottom portion of the form (fitness-for-duty certification) should be filled out by my Health Care Provider and returned to Human Resources on the day I return to work from FMLA leave.

I understand that the Certification of Health Care Provider form should be returned to Human Resources within 15 days. If I am not able to return the form within the allowed timeframe, I will contact Human Resources for assistance.

If this information is not received in the required timeframe, my leave will be considered unauthorized.

| Stephanie Rashin | *(signature)* |
|---|---|
| Print Name | Employee Signature |

# Notice of Eligibility and Rights & Responsibilities
# (Family and Medical Leave Act)

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division

OMB Control Number: 1235-0003
Expires: 8/31/2021

In general, to be eligible an employee must have worked for an employer for at least 12 months, meet the hours of service requirement in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles. While use of this form by employers is optional, a fully completed Form WH-381 provides employees with the information required by 29 C.F.R. § 825.300(b), which must be provided within five business days of the employee notifying the employer of the need for FMLA leave. Part B provides employees with information regarding their rights and responsibilities for taking FMLA leave, as required by 29 C.F.R. § 825.300(b), (c).

## [Part A – NOTICE OF ELIGIBILITY]

TO: **Stephanie Raskin**
_____
Employee

FROM: **Roberta Brozik**
_____
Employer Representative

DATE: **08/20/2019**
_____

On **08/18/2020**_____, you informed us that you needed leave beginning on **08/24/2020**_____ for:

____ The birth of a child, or placement of a child with you for adoption or foster care;

**✓** Your own serious health condition;

____ Because you are needed to care for your ____ spouse; _____child; _____ parent due to his/her serious health condition.

____ Because of a qualifying exigency arising out of the fact that your ____ spouse; _____son or daughter; _____ parent is on covered active duty or call to covered active duty status with the Armed Forces.

____ Because you are the ____ spouse; _____son or daughter; _____ parent; _____ next of kin of a covered servicemember with a serious injury or illness.

This Notice is to inform you that you:

**✓** Are eligible for FMLA leave (See Part B below for Rights and Responsibilities)

_____ Are **not** eligible for FMLA leave, because (only one reason need be checked, although you may not be eligible for other reasons):

    _____ You have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately ___ months towards this requirement.
    _____ You have not met the FMLA's hours of service requirement.
    _____ You do not work and/or report to a site with 50 or more employees within 75-miles.

If you have any questions, contact **Roberta Brozik**_____ or view the
FMLA poster located in **Staff Lounge**_____.

## [PART B-RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE]

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the applicable 12-month period. **However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by** **September 3, 2019**_____. (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice; additional time may be required in some circumstances.) If sufficient information is not provided in a timely manner, your leave may be denied.

**✓** Sufficient certification to support your request for FMLA leave. A certification form that sets forth the information necessary to support your request **✓** is/____ is not enclosed.

____ Sufficient documentation to establish the required relationship between you and your family member.

____ Other information needed (such as documentation for military family leave): _____

_____

_____

____ No additional information requested

If your leave does qualify as FMLA leave you will have the following **responsibilities** while on FMLA leave (only checked blanks apply):

✓ Contact Sara DePonte _____ at 509-685-0612 _____ to make arrangements to continue to make your share of the premium payments on your health insurance to maintain health benefits while you are on leave. You have a minimum 30-day (or, indicate longer period, if applicable) grace period in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

✓ You will be required to use your available paid ✓ **sick**, ✓ **vacation**, and/or ✓ **other leave** during your FMLA absence. This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement.

____ Due to your status within the company, you are considered a "key employee" as defined in the FMLA. As a "key employee," restoration to employment may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us. We ____ **have**/____ **have not** determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

____ While on leave you will be required to furnish us with periodic reports of your status and intent to return to work every _____. (Indicate interval of periodic reports, as appropriate for the particular leave situation).

**If the circumstances of your leave change, and you are able to return to work earlier than the date indicated on the this form, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

If your leave does qualify as FMLA leave you will have the following **rights** while on FMLA leave:

- You have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as:

  ____ the calendar year (January – December).

  ____ a fixed leave year based on _____.

  ✓ the 12-month period measured forward from the date of your first FMLA leave usage.

  ____ a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

- You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered servicemember with a serious injury or illness. This single 12-month period commenced on _____.

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.
- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. (If your leave extends beyond the end of your FMLA entitlement, you do not have return rights under FMLA.)
- If you do not return to work following FMLA leave for a reason other than: 1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, recurrence, or onset of a covered servicemember's serious injury or illness which would entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave.
- If we have not informed you above that you must use accrued paid leave while taking your unpaid FMLA leave entitlement, you have the right to have ✓ **sick**, ✓ **vacation**, and/or ✓ **other leave** run concurrently with your unpaid leave entitlement, provided you meet any applicable requirements of the leave policy. Applicable conditions related to the substitution of paid leave are referenced or set forth below. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid FMLA leave.

  ✓ For a copy of conditions applicable to sick/vacation/other leave usage please refer to Personnel Policy 2.25 available at: NEWACS Intranet _____

  ____ Applicable conditions for use of paid leave: _____

  _____

  _____

  _____

  _____

**Once we obtain the information from you as specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement. If you have any questions, please do not hesitate to contact:**
Roberta Brozik _____ at 509-685-0629 _____.

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**
It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THE WAGE AND HOUR DIVISION.**

Form WH-381 Revised February 2013

# Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)

**U.S. Department of Labor**

Wage and Hour Division



---

DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT

OMB Control Number: 1235-0003
Expires: 8/31/2021

---

## SECTION I: For Completion by the EMPLOYER

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: Stevens County dba Northeast Washington Alliance Counseling Services

Employee's job title: Peer Counselor                Regular work schedule: Tue - Sat, 8:00 am - 4:30 pm

Employee's essential job functions: See attached job description

Check if job description is attached: ✓

## SECTION II: For Completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: _____
First                          Middle                          Last

## SECTION III: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: _____

Type of practice / Medical specialty: _____

Telephone: (_____)_____ Fax:(_____)_____

---

Form WH-380-E  Revised May 2015

## PART A: MEDICAL FACTS

1. Approximate date condition commenced: _____

   Probable duration of condition: _____

   **Mark below as applicable:**
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   ___No  ___Yes.  If so, dates of admission:

   _____

   Date(s) you treated the patient for condition:

   _____

   Will the patient need to have treatment visits at least twice per year due to the condition?  ___No  ___Yes.

   Was medication, other than over-the-counter medication, prescribed?  ___No  ___Yes.

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
   ____No  ____Yes.  If so, state the nature of such treatments and expected duration of treatment:

   _____

2. Is the medical condition pregnancy?  ___No  ___Yes.  If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question.  If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to the condition:  ____No  ____Yes.

   If so, identify the job functions the employee is unable to perform:

   _____

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   _____

   _____

   _____

   _____

   _____

   _____

   _____

PART B: AMOUNT OF LEAVE NEEDED

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery?  ___No  ___Yes.

If so, estimate the beginning and ending dates for the period of incapacity: _____

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition?  ___No  ___Yes.

If so, are the treatments or the reduced number of hours of work medically necessary?
___No  ___Yes.

Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

_____

Estimate the part-time or reduced work schedule the employee needs, if any:

_____ hour(s) per day; _____ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?  ____No  ____Yes.

Is it medically necessary for the employee to be absent from work during the flare-ups?
_____ No  _____Yes. If so, explain:

_____

_____

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency          : _____ times per _____ week(s) _____ month(s)

Duration: _____ hours or ___ day(s) per episode

ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____    _____

**Signature of Health Care Provider**             **Date**

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

# Exhibit 7

**Roberta Brozik**

| | |
|---|---|
| ~rom: | Anahlise Pond |
| _ent: | Tuesday, December 10, 2019 11:33 AM |
| To: | Roberta Brozik |
| Subject: | RE: Documentation |

I have. I have let her know if it continues or happens again to let me know.

**From:** Roberta Brozik
**Sent:** Tuesday, December 10, 2019 11:22 AM
**To:** Anahlise Pond <apond@stevenscountywa.gov>
**Subject:** FW: Documentation

Hi Anahlise,

Have you responded to Stephanie regarding this?

Thanks,

Roberta Brozik
Personnel Specialist
NEW Alliance Counseling Services
165 E Hawthorne Ave
 ɔlville, WA 99114
ᒫ09-685-0629
rbrozik@stevenscountywa.gov

**From:** David Nielsen
**Sent:** Tuesday, December 10, 2019 10:42 AM
**To:** Roberta Brozik <rbrozik@stevenscountywa.gov>
**Subject:** FW: Documentation

Roberta—as discussed.

David Nielsen, Ph.D.
Executive Director
Northeast Washington Alliance Counseling Services
165 E. Hawthorne Avenue
Colville, WA 99114
(509) 685-0627

**From:** Stephanie R. Raskin
**Sent:** Tuesday, December 10, 2019 8:07 AM
**To:** Anahlise Pond <apond@stevenscountywa.gov>
**Cc:** David Nielsen <dmnielsen@stevenscountywa.gov>
**ᶜubject:** RE: Documentation

i

Stephanie Raskin – Agency Affiliated Peer Counselor

NEW Alliance Counseling Services
Evaluation & Treatment Facility
   nail: **sraskin@stevenscountywa.gov**
509.685.5000

**From:** Anahlise Pond
**Sent:** Monday, December 9, 2019 3:36 PM
**To:** Stephanie R. Raskin <SRaskin@stevenscountywa.gov>
**Subject:** RE: Documentation

I wanted to let you know that both the images are the same.

**From:** Stephanie R. Raskin
**Sent:** Monday, December 9, 2019 3:19 PM
**To:** David Nielsen <dmnielsen@stevenscountywa.gov>
**Cc:** Anahlise Pond <apond@stevenscountywa.gov>
**Subject:** Documentation
**Importance:** High

Good afternoon David,

I want to preface this email by reiterating, I do not want the content of this email to be shown to or shared with anyone. The last email I sent regarding feeling pressured to make a complaint was repeated to me by a tech so my trust is a bit fragile.

I defended ▇▇▇ 100% but he pulled me aside and mentioned that he also sent messages to a former employee and was in a lot of trouble. I spoke to said person trying to get a clearer picture of what happened. The information I obtained has completely changed my perspective on the situation. I did think this was "out of character" and "an isolated incident". What I now know shows a pattern of this behavior. When the phrase "predatory behavior" was used by one of the nurses after Annalisa was discussing it, I laughed because I felt that was quite an overreach. Now I believe that's exactly what it is.

I down played how persistent he was in asking me to come over. Knowing what I now know leads me to believe that he could've easily escalated. I deleted the messages on that Saturday when I felt it was all being blown out of proportion. I now feel it was rightfully so. I spent 3 hours trying to recover my deleted messages this weekend. I seem to only be able to recover archived messages, not deleted, as my phone doesn't sync with my computer and I haven't backed it up in forever. I did find 2 screen shots I had forgotten I took and sent to a friend. His first message to me was that his wife was out of town and he has a hot tub, and I should come over. I'm embarrassed to admit that I responded that I would if he was single. His next message is the first screen shot I'm attaching. I was shocked and screen shot it and sent it to a friend as a "what the hell???" type of thing. He continued with asking me, mentioning that no swimsuits are allowed, no one would know, etc. He perused it for a long time. I wasn't firm but I did say no and reminded him several times that he was married. The second screen shot was over an hour later, after multiple messages asking. I am again embarrassed that I responded the way I did but I did say no. I am attaching these screen shots knowing I will be judged but I feel it's more important to document this. He never asked me for my address but he did say if I won't come to him, he'll come to me. I told him no. I took the second screen shot and sent it to my friend saying, man, he won't give up.

Do what you will with this information but I do not feel comfortable knowing he works with vulnerable clients seeing  ᴐw that there is an escalating pattern to this behavior.

Please keep this discreet this time. Thank you.

2

Def NEWACS 00480

*Stephanie Raskin – Agency Affiliated Peer Counselor*

NEW Alliance Counseling Services
Evaluation & Treatment Facility
email: sraskin@stevenscountywa.gov
509.685.5000

**3**



Def NEWACS 00482



Def NEWACS 00483

**Roberta Brozik**

| | |
|---|---|
| ⁻rom: | Stephanie R. Raskin |
| .ent: | Saturday, November 30, 2019 1:19 PM |
| To: | David Nielsen |
| | |
| **Importance:** | High |

Good afternoon,

I am very torn about this issue. I do not feel comfortable reporting someone for something inappropriate they've done outside of work. I feel I'm being pressured to report it when I think he made a huge error in judgement. However, I also feel that it WAS inappropriate and who's to say if it will happen again if it is not addressed. I came into work today and entered the nurses station where Kathleen, Caroline, Heather Day, and Annalisa were in the middle of a conversation about Annalisa receiving inappropriate messages from someone and it was alluded to that it was a coworker. I asked her, did ▮▮ message you too? She mentioned he sent her inappropriate messages and asked what he sent me. ▮▮ messaged me out of the blue saying his wife was in Spokane shopping and would I like to come over, that he'd heat up the hot tub, no suits allowed. I reminded him he was married and turned him down. I think it was wrong and crossed a line that should never be crossed but I also feel like if it had been said in a bar, it wouldn't have been an issue, it would've just been brushed off. I do not know if he's done this to anyone else other than Annalisa and myself. He has hardly ever said more than 5 words to me at work before he messaged me. I do not feel comfortable letting ANYONE read my personal messages unless they were related to or had something to do with work. The only thing it has to do with work is that we are coworkers. I do not want anyone else involved with this and I do not want the content of this email shared with any of my other coworkers including the charge nurses other than yes, I did send you an email at your ⁻equest. I do not want to be pressured from ANYONE to report or disclose more than I have, which I am already ⌐xtremely uncomfortable doing. Thank you.

*Stephanie Raskin – Agency Affiliated Peer Counselor*
NEW Alliance Counseling Services
Evaluation & Treatment Facility
email: sraskin@stevenscountywa.gov
509.685.5000

1

# Exhibit 8

To:     Stephanie Raskin, E&T Peer Counselor

From:   Lisa Kreis, Security Officer

CC:     Personnel File; David Nielsen, Todd Johnson

Date:   March 13, 2018

Re:     Progressive Discipline: **Written Warning**

---

**Description of Problem Resulting in Written Warning**

An incident report (#18-03-03) was filed on March 5, 2018, which included the allegation that you willfully posted on Social Media (Facebook) information about your job and about 3 different E&T patients. While the post did not identify specific patients by name, it did disclose sufficient generic information that others knowledgeable about the E&T (or the patients themselves) would likely be able to identify the specific patients if they read the post. On Friday, March 9, 2018 during our meeting, you confirmed that the allegations were true and you reported that you immediately deleted the Facebook post during the March 3-4, 2018 weekend after you received a call from Jim Stryd, E&T Nurse Manager instructing you to do so.

**Description of Policy or Administrative Rule that was Broken**

Sharing information about clients on Social Media violates Northeast Washington Alliance Counseling Services (NEWACS) policies as follows:

- Social Media and Social Networking Policy 7.42 All NEWACS workforce members must protect the individually identifiable health information of NEWACS clients under HIPAA, the HITECH Act, and other state and federal laws, including such data maintained or transmitted via social media… All officers, agents, and employees of NEWACS must adhere to this policy, and all supervisors are responsible for enforcing this policy. NEWACS will not tolerate violations of this policy. Violation of this policy is grounds for disciplinary action, up to and including termination of employment and criminal or professional sanctions in accordance with NEWACS' sanction policy and personnel rules and regulations. Familiarity with the policy and demonstrated competence in the requirements of the policy are an important part of every NEWACS employee's responsibilities.

- Responsibilities of NEWACS Workforce Members Regarding Social Media 7.42B (1)

  NEWACS workforce members are prohibited from posting any content that is personal individually identifiable health information, including but not limited to protected health information ("PHI"), including patient images and audio or video recordings on any social media website. This prohibition applies to postings created on agency-issued or personally owned devices.

- Responsibilities of NEWACS Workforce Members Regarding Social Media 7.42B (2)

  NEWACS workforce members are prohibited from posting any content regarding NEWACS clients, NEWACS workforce, and/or NEWACS affiliates that is unlawful, disruptive, threatening, profane, abusive, harassing, embarrassing, tortious, defamatory, obscene, libelous, invasive of

another's privacy, hateful, or racially, ethnically, or otherwise objectionable as solely determined in NEWACS' discretion.

**Consequence of Policy Violation: Written Warning**

As a result of the determination that you violated the above referenced policy, you are hereby issued the disciplinary action of "**Written Warning**." In addition, the following warnings and corrective actions are hereby issued:

1. You must read NEWACS Social Media and Social Networking policy 7.42, and then sign an affidavit attesting the policy has been read, understanding, and will abide by the policy.

2. You must complete the following Relias trainings and submit the certification of complete to Lisa Kreis, Security Officer by March 20, 2018:

   a. NEWACS HIPAA Security Training

   b. HIPAA Privacy Training

3. You are prohibited from posting on Social Media or Social Networking platforms, as described in NEWACS Social Media and Social Networking policy 7.42, any information regarding NEWACS or Alliance E&T clients, NEWACS or Alliance E&T workforce members, or NEWACS affiliates. You are prohibited from "friending" or adding NEWACS or Alliance E&T clients to your social media or social networks, communicating with current or former clients (including texting or messaging clients), or using Social Media or Social Networks to provide medical and/or behavioral healthcare advice that may be perceived as affiliated with NEWACS or Alliance E&T.

This letter of disciplinary action will be maintained in your Personnel File. In the event that you fail to comply with the above described instructions, policies and/or supervisory directives, further disciplinary action, up to and including termination, may occur.

_____        3/13/18
Workforce member                        Date

_____        3/14/18
Security Officer                        Date

# Memo

| | |
|---|---|
| **To:** | Stephanie Raskin |
| **From:** | Todd Johnson, LMHC, E&T Treatment Plan Coordinator, Supervisor |
| **CC:** | Personnel File |
| **Date:** | June 11, 2018 |
| **Re:** | Discipline: **Written Warning** |

---

### Description of Problem

On June 9, 2018, an incident occurred wherein it was reported you had misplaced personal/work keys at the E&T in the milieu and confirmed by you.

Due to this incident, you are being given a written warning, as this incident could impact the overall safety of staff and E&T patients if a patient were to acquire the work keys, as a patient could use to leave unit or have access to patient restricted areas, including access to confidential information.

The incident described above has been determined to be due to negligent performance of your job description.

### Description of Policy or Administrative Rule that was Broken Regarding Allegations of Sleeping on the Job:

1) **NEWACS Personnel Policy 2.48A (1) (a), (d), (e), (k), and (l)**: *"…The following list is not all-inclusive but is intended to illustrate the minimum expectations for acceptable workplace conduct and performance… (d) Good judgment and common sense; making work-related decisions and/or taking actions that are in the best interest of clients and the agency… (e) Adherence to agency policies, procedures, safety rules, safe work practices, contractual obligations, and State and Federal laws…(k) Performance of assigned duties and responsibilities with the highest degree of public trust…(l) Devotion of full effort to job responsibilities during work hours."*

2) **NEWACS Policy 2.60B (1) (h)**: *"…the following are examples of behaviors that may result in disciplinary action…(h)Actions that jeopardize the personal safety of clients, co-workers, or the public … while conducting NEWACS business."*

### Consequence of Policy Violations: Written Warning

You are hereby issued the disciplinary action of an **Written Warning** in accordance with NEWACS Policy 2.60(C)(d).   The following corrective actions are also required:

Page 1 of 2

1. You must comply with all NEWACS policies and procedures governing your job duties as a peer counselor at NEWACS. In particular, you must comply with the following:

   a. You are required to keep your work keys on your persons at all times while in the milieu.

   b. You will have no more safety infractions reported against you for the next 60 days.

   c. As your supervisor, I will supply you with a description of your personal responsibilities and I will expect you to adhere.

Stephanie, this is your second formal disciplinary action that you have received since beginning employment with NEWACS, pertaining to security violations. The prior written warning was on March 13, 2018. Allegations of any other misconduct, failure to comply with any NEWACS policy and/or complete job duties as assigned will result in further disciplinary action up to and including termination.

_____  Declined copy    _6/11/18___
Stephanie Raskin                              Date

_____              _6/11/18___
Todd Johnson                              Date

_____              _6/11/18___
Grace Harvey                              Date